**FIRST DIVISION**
September 8, 2008

No. 1-06-0476

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 02  CR 23954 |
| | ) | |
| EVELYN SANTIAGO, | ) | The Honorable |
| | ) | Dennis J. Porter, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE GARCIA delivered the opinion of the court.

The circuit court suppressed the defendant's written statement based on a finding that Illinois Supreme Court Rule of Professional Conduct 4.2 (134 Ill. 2d R. 4.2), generally referred to as the "no-contact rule," was violated by assistant State's Attorneys.  Following the defendant's arrest on child endangerment but before formal charges were filed, an assistant State's Attorney interrogated the defendant after the State's Attorney's office (SAO) filed a petition in juvenile court based on the same facts that triggered the criminal investigation.  In the juvenile court case, the SAO filed a petition seeking to declare the defendant's children wards of the court; the

No. 1-06-0476

defendant was named a respondent and was appointed counsel. Her appointed counsel was not contacted by the assistant State's Attorney prior to the interrogation of the defendant in the criminal matter. The circuit court determined it was bound by the holding in People v. White, 209 Ill. App. 3d 844, 875, 567 N.E.2d 1368 (1991), where the Fifth District found an earlier version of the Illinois no-contact rule "provides protection to a criminal suspect even prior to the filing of formal charges." Rule 4.2 prohibits a lawyer from communicating "with a party the lawyer knows to be represented by another lawyer in that matter" without consent of that party's lawyer. (Emphasis added.) 134 Ill. 2d R. 4.2.

We hold Rule 4.2 is not implicated under the facts of this case because the criminal and juvenile cases are different "matters." The defendant did not have an attorney in the criminal matter. Consequently, the holding in White does not control here. We therefore reverse the order of the circuit court suppressing the defendant's written statement and remand for further proceedings.

BACKGROUND

On June 21, 2002, S.H., the 13-month-old daughter of the defendant, Evelyn Santiago, was taken to Norwegian American Hospital with a laceration to her vagina. The treating

**2**

physician, Dr. Bogolub, determined the injury could be consistent with the explanation given by the defendant--that S.H. fell onto a child's plastic "sipping cup" while bathing. Intentional abuse was also a potential cause.

On June 23, 2002, Detective Gregory Auguste of the special victims unit at Area 5 began investigating S.H.'s injury. On June 25, Dr. Fujara, a child abuse expert, informed Auguste that S.H.'s injury was highly suspicious for abuse. That same day, the office of the Cook County State's Attorney filed petitions in the juvenile justice division of the circuit court seeking to have S.H. and her two-year-old brother, E.H., adjudicated wards of the court (hereinafter, juvenile case). The petitions were based on S.H.'s vaginal injury. Attorney Melinda MacGregor was appointed to represent the defendant. She entered an appearance on June 27, 2002.

The defendant was interviewed numerous times by Detective Auguste and, on August 28, 2002, was arrested for child endangerment. The defendant waived her Miranda rights and spoke to Auguste about S.H.'s injury. She later waived her Miranda rights and spoke to two assistant State's Attorneys about the injury. The defendant continued to maintain S.H.'s vaginal injury occurred in a bathing accident, but gave inconsistent causes. On the following day, the defendant again waived her

<u>Miranda</u> rights and spoke to Detective Gabriel Gomez and an assistant State's Attorney. The defendant eventually made an incriminating statement memorialized in writing. At no time did the detectives or assistant State's Attorneys contact Attorney MacGregor.

On September 27, 2002, the defendant was charged by indictment with two counts of aggravated battery of a child, one count of female genital mutilation, and two counts of aggravated battery (hereinafter, criminal case). The public defender's office was appointed to represent her and entered an appearance in criminal court.

On February 24, 2005, the defendant filed an amended motion to suppress evidence in the criminal case. The defendant alleged her statements to the detectives and assistant State's Attorneys were taken in violation of Illinois Supreme Court Rule of Professional Conduct 4.2. The defendant alleged the rule was violated because Attorney MacGregor did not consent to the custodial questioning.

Following a hearing, the trial court concluded it was bound by the holding in <u>White</u>, 209 Ill. App. 3d 844, 567 N.E.2d 1368-- Rule 4.2 applies in criminal cases prior to the filing of formal charges and prohibits contact between a represented suspect and

**4**

the prosecution without the consent of the suspect's attorney.[1] Following the reasoning in <u>White</u>, the circuit court ruled any statements the defendant made to the detectives alone were admissible because they did not act as the "alter ego" of the prosecution.  <u>White</u>, 209 Ill. App. 3d at 875.  However, the court ruled all communication between the assistant State's Attorneys and the defendant occurred in violation of Rule 4.2 and suppressed the statements the defendant made to them.

The State timely filed a certificate of substantial impairment and a notice of appeal.

## ANALYSIS

Illinois Supreme Court Rule of Professional Conduct 4.2 states:

> "During the course of representing a
> client a lawyer shall not communicate or
> cause another to communicate on the subject
> of the representation with a party the lawyer
> knows to be represented by another lawyer in
> that matter unless the first lawyer has
> obtained the prior consent of the lawyer

---

[1] <u>White</u> addressed the predecessor version, Rule 7-104(a)(1) (107 Ill. 2d R. 7-104(a)(1)).

representing such other party or as may
otherwise be authorized by law." 134 Ill. 2d
R. 4.2.

The State contends (1) Rule 4.2 does not apply in criminal cases, (2) if Rule 4.2 does apply in criminal cases, it does not apply before the filing of formal charges, (3) if Rule 4.2 applies prior to the filing of charges, it was not violated in this case because the criminal and juvenile cases are different "matters" or because the questioning is "authorized by law," and (4) if Rule 4.2 applies and was violated, the suppression of the defendant's written statement is not the proper remedy. According to the State, "Not a single authority has applied the exclusionary rule in the factual setting presented by this case."

These contentions hinge on our interpretation of Rule 4.2, a question of law. People v. Roberts, 214 Ill. 2d 106, 116, 824 N.E.2d 250 (2005) (the interpretation of supreme court rules is a question of law). Accordingly, we defer our review of the evidence presented at the suppression hearing until, and unless, we determine Rule 4.2 applies here. Reviewing courts interpret supreme court rules the same as statutes. In re Estate of Rennick, 181 Ill. 2d 395, 404, 692 N.E.2d 1150 (1998). The "primary goal" is to ascertain and give effect to the intent of the drafters, the most reliable indicator of which is the plain

**6**

and ordinary meaning of the language used. Roberts, 214 Ill. 2d at 116. If the language is ambiguous, we may look to additional sources to determine the drafters' intent, including the purposes of the rule, the evils sought to be remedied, and the goals to be achieved. Brucker v. Mercola, 227 Ill. 2d 502, 513-14, 886 N.E.2d 306 (2007). Review is de novo. Roberts, 214 Ill. 2d at 116.

Illinois Rule of Professional Conduct 4.2 is largely based on American Bar Association (ABA) Model Rule of Professional Conduct 4.2. The no-contact rule has been enacted in some form in every jurisdiction and serves at least two purposes: (1) it governs attorney conduct in order to foster public confidence in the legal profession (see, e.g., United States v. Talao, 222 F.3d 1133, 1138 (9th Cir. 2000) (explaining, "The rule exists in order to ' "preserve *** the attorney-client relationship and the proper functioning of the administration of justice." ' [Citation.]")); and (2) it protects individuals from "being tricked by a lawyer's artfully contrived questions into giving his case away" (United States v. Massiah, 307 F.2d 62, 66 (2d Cir. 1962), rev'd on other grounds, 377 U.S. 201, 12 L. Ed. 2d 246, 84 S. Ct. 1199 (1964); United States v. Sutton, 801 F.2d 1346, 1366 (D.C. Cir. 1986) (purpose of rule is "to ensure that lawyers not prey on persons known to be represented by

**7**

No. 1-06-0476

counsel")).

The State first contends Rule 4.2 does not apply in criminal cases. We note that the case law, including from this and other jurisdictions, generally holds the contrary. See, e.g., White, 209 Ill. App. 3d at 873 (the no-contact rule "applies to criminal as well as civil cases"); People v. Nance, 100 Ill. App. 3d 1117, 1123, 427 N.E.2d 630 (1981) (addressing whether defense counsel violated the no-contact rule); United States v. Ryans, 903 F.2d 731, 735 (10th Cir. 1990), cert. denied, 498 U.S. 855, 112 L. Ed. 2d 118, 111 S. Ct. 152 (1990) (it is "well settled" the rule "applies to criminal prosecutions as well as to civil litigation"); United States v. Hammad, 858 F.2d 834 (2d Cir. 1988), cert. denied, 498 U.S. 871, 112 L. Ed. 2d 154, 111 S. Ct. 192 (1990) (finding a no-contact rule violation in a criminal case); see also United States v. Tapp, No. CR107-108 (S.D. Ga. June 4, 2008) (addressing failed attempts by the Department of Justice to exempt federal prosecutors from the no-contact rule). Based on the cited authorities, we reject the State's blanket position that Rule 4.2 does not apply in criminal cases.

The case law is less settled regarding the State's second contention--that the no-contact rule applies only after formal charges are filed. Compare United States v. Fitterer, 710 F.2d 1328, 1333 (8th Cir. 1983), cert. denied, 464 U.S. 852, 78 L. Ed.

**8**

2d 150, 104 S. Ct. 165 (1983) (no ethical violation where the defendant, who is not in custody and has not been formally charged, is contacted); United States v. Vasquez, 675 F.2d 16, 17 (2d Cir. 1982) (no-contact rule not violated where noncustodial contact occurs prior to the filing of charges); United States v. Kenny, 645 F.2d 1323, 1339 (9th Cir. 1981), cert. denied, 452 U.S. 920, 69 L. Ed. 2d 425, 101 S. Ct. 3059 (1981) (noncustodial contact by an informant prior to arrest or indictment does not implicate the rule), with Hammad, 858 F.2d at 837 (no-contact rule is not coextensive with the sixth amendment); White, 209 Ill. App. 3d at 873 (following Hammad and holding "[t]he rule is not coextensive with the sixth amendment right to counsel, but may apply prior to the bringing of judicial charges").

We find, however, no need to address the State's disagreement with the holding in the Hammad and White opinions that the no-contact rule may provide protection before the sixth amendment right to counsel comes into play.[2] The case before us presents a more narrow issue: whether Rule 4.2 is implicated by

---

[2] As expressed in a federal decision, the no-contact rule may play an independent role in the proper functioning of the administration of justice. See United States v. Talao, 222 F.3d 1133, 1138 (9th Cir. 2000).

the facts presented here.  This we believe is the focus of the State's third contention--that the juvenile case and the criminal case are different "matters" for purposes of Rule 4.2.

"Matter" is not defined in the Illinois Rules of Professional Conduct, and the comments to ABA Model Rule 4.2 provide little guidance to its intended meaning.  The cases cited by the parties involve the situation present in White where the prosecution or its alter ego contacts an individual about a criminal matter without the consent of the individual's known criminal defense counsel.  Neither party points to any case presenting the factual scenario here where a defendant seeks to suppress evidence in a criminal case based on the prosecution's failure to obtain consent of appointed civil counsel. Nonetheless, absent authority to the contrary, we are unconvinced Rule 4.2 was meant to apply in such situations.

We are persuaded that the juvenile and criminal cases are separate matters under Rule 4.2 based on the holding in People v. Moreno, 319 Ill. App. 3d 445, 744 N.E.2d 906 (2001).  In Moreno, the State filed juvenile wardship petitions alleging the defendant's four children were abused.  The State also charged the defendant with aggravated battery of a child.  The juvenile and criminal cases were grounded on the defendant's alleged abuse of her seven-month-old nephew, G.M. Following the juvenile

**10**

adjudicatory hearing, the trial court ruled the State failed to prove by a preponderance of the evidence that the defendant abused G.M. The defendant then sought to have the criminal charges dismissed, arguing the State was collaterally estopped from proceeding in criminal court because the same factual issues were resolved in her favor in the juvenile proceeding. The criminal trial court disagreed.

On appeal from the denial of her motion to bar prosecution, this court affirmed. We distinguished juvenile and criminal proceedings:

> "In the juvenile proceeding, the ultimate litigated issue was whether the minor children of defendant were abused due to defendant's involvement with the injuries of G.M.; in the subsequent criminal proceeding, the ultimate litigated issue will be whether the defendant is criminally culpable for the injuries to G.M. In the juvenile proceeding, the State's purpose is protection of defendant's minor children; in the criminal proceeding, the State's purpose is discovering if defendant injured G.M. and punishing her if found guilty. The

**11**

No. 1-06-0476

> differences of purpose and goal in the civil
> and criminal procedures are 'very real.'
> [Citation.]"  Moreno, 319 Ill. App. 3d at
> 452.

We also noted that a criminal trial is "the exclusive forum for determining guilt or innocence" and that the State lacked "a full and fair opportunity to litigate" the defendant's culpability in the juvenile proceedings.  Moreno, 319 Ill. App. 3d at 452-53.

We acknowledge the decision in Moreno arose under different facts and addressed different issues than those raised in this case.  However, we agree with Moreno's conclusion that juvenile and criminal proceedings, which serve different purposes and have different goals, are entirely different proceedings.  In addition to those highlighted in Moreno, we note several other distinctions between juvenile and criminal proceedings. Proceedings under the Juvenile Court Act of 1987, unlike criminal proceedings, are not meant to be adversarial.  705 ILCS 405/1-5(1) (West 2006) ("proceedings under this Act are not intended to be adversary in character").  As the State points out, juvenile and criminal cases (1) have different case numbers, (2) are heard by different judges, and (3) involve different employees of the SAO.

Our conclusion is consistent with the common sense reading

**12**

of Rule 4.2 written as a single sentence.  See <u>People v. Morgan</u>, 112 Ill. 2d 111, 141, 492 N.E.2d 1303 (1986) (defendant's interpretation rejected in light of "the common sense reading of the admonition").  "Matter" in the phrase "represented by another lawyer in that <u>matter</u>" refers back to the "subject of the representation."  While the focus of the investigation--the injury to the defendant's daughter--led to both a juvenile proceeding and a criminal investigation being instituted against the defendant, "the subject of the representation" of Attorney MacGregor was solely the juvenile proceeding in which the order appointing MacGregor was entered.  Because the only "subject of representation" of Attorney MacGregor was the juvenile proceeding, the only reference for "matter" in the latter phrase was the juvenile proceeding in which Ms. Santiago was represented by another lawyer.  Under the facts of this case, "matter" in Rule 4.2 could not reference the criminal investigation in this case because it was not the "subject of the representation."

Furthermore, to read Rule 4.2 as the defendant urges would create anomalous results for similarly situated individuals facing identical investigations.  In the defendant's situation, she would be afforded greater protection under Rule 4.2 than an accused in a criminal investigation where, at the time she is interviewed by the SAO, the filing of the juvenile court petition

**13**

has been delayed.  Under the defendant's reading of Rule 4.2, the accused with a juvenile proceeding pending cannot be properly interviewed by assistant State's Attorneys without the consent of her civil attorney; where no juvenile proceeding is pending at the time of the interview, there is no such requirement under Rule 4.2.  We discern no reason, nor have we been given one apart from the broad reading of Rule 4.2 urged by the defendant, to treat these similarly situated individuals differently.

Counsel's involvement in this case reinforces our conclusion that Rule 4.2 cannot be read as the defendant urges.  The defendant was appointed counsel in the juvenile case and, after charges were filed in the criminal case, separate counsel was appointed.  Each attorney entered an appearance in the respective case; there is no suggestion that the two attorneys coordinated their respective defense of Ms. Santiago.  As the State pointed out at oral argument, no mechanism exists under either the Juvenile Court Act of 1987 or the Code of Criminal Procedure of 1963 (725 ILCS 5/100-1 et seq. (West 2006)) to consolidate juvenile and related criminal proceedings.

Additionally, nothing in the record supports that Attorney MacGregor, presumably trained in the nuances of juvenile

**14**

proceedings, is competent in criminal proceedings.[3]  In a related vein, Attorney MacGregor's involvement in the criminal investigation might have exceeded the statutory scope of her juvenile appointment.  See 705 ILCS 405/1-5(1) (West 2006) (providing for appointment of counsel to represent indigent parents threatened with the loss of parental rights and stating counsel "shall appear at all stages of the trial court proceeding, and such appointment shall continue through the permanency hearings and termination of parental rights proceedings").

For these reasons, we conclude the juvenile and criminal cases are different "matters" for purposes of Rule 4.2.  Here, MacGregor was appointed counsel for Ms. Santiago as a respondent in the juvenile case, a civil proceeding.  At the time the defendant was questioned by representatives of the SAO regarding the criminal investigation, she did not have counsel in the

---

[3] Attorney MacGregor was appointed more than two months before the written statement of the defendant was obtained by the SAO in the criminal investigation that the circuit court suppressed; yet, there is nothing in the record to suggest Attorney MacGregor played any role in that investigation.

criminal case.  Simply put, there was no attorney to consent to the contact in the criminal matter; Rule 4.2 was never triggered.

In light of our holding, we do not address the State's remaining contentions, including whether the prosecution's questioning falls within the "authorized by law" exception to Rule 4.2 or whether suppression of the defendant's statement is the proper remedy in the face of a violation.  We also make no finding regarding the admissibility of the defendant's statements in the juvenile case.

## CONCLUSION

For the reasons stated, the order of the circuit court of Cook County is reversed and the cause is remanded to the circuit court for further proceedings.

Reversed and remanded.

Wolfson, J., concurs.

PRESIDING JUSTICE ROBERT E. GORDON, dissenting:

I respectfully dissent from the majority opinion.  One detective started one investigation against one defendant concerning one injury.  Namely, on June 23, 2002, Detective Auguste started an investigation of one injury to defendant's daughter.  From this one investigation into this one injury, one office of the State generated two sets of charges: one civil, one criminal.  The one office was the Cook County State's Attorney's office.  The incriminating information developed in this one investigation would be used by this one office to further both its civil and criminal charges.

There is no way that defendant's civil defense attorney could protect the rights of her

**16**

client in the civil case, without being present during the interrogations of the defendant in this investigation.

Fortunately, our supreme court had already recognized the need to protect the attorney-client relationship, in the face of an opposing attorney's investigation. That is the whole point behind our supreme court's Rule of Professional Conduct 4.2.

As the majority noted, we interpret a supreme court rule, first and foremost, by looking at the plain meaning of its words. Slip op. at 6, citing Roberts, 214 Ill. 2d at 116. Rule 4.2 states in relevant part:

"During the course of representing a client a lawyer shall not communicate *** on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter ***." 134 Ill. 2d R. 4.2 .

The majority construes the words "in that matter" in isolation, without considering their context in Rule 4.2. The word "that" refers the reader back to a specific thing previously mentioned in the sentence, namely "the subject of the representation." The word "that" means, among other things, "referring to a specific thing previously mentioned." Oxford English Dictionary, 17 Oxford English Dictionary 868-873 (2d ed. 1989).

When we apply the words of the rule to the facts of the case at bar, the result is clear. The defendant was "represented by another lawyer." The prosecutors nonetheless questioned her about the "matter" or "subject" of "that" representation. The "subject" or "matter" about which

**17**

the prosecutors questioned defendant was the injury that was the "subject" of the civil attorney's appointment.

As the majority also notes, if the language of a rule is ambiguous, we interpret the rule in light of "the purposes of the rule, the evils sought to be remedied, and the goals to be achieved." Slip op. at 6, citing Brucker, 227 Ill. 2d at 513-14. The majority concludes that the purpose of Rule 4.2 is to foster public confidence in the legal profession and to protect clients from being tricked by an opposing lawyer into giving away his case. Slip op. at 7.

Applying Rule 4.2 to this case furthers both of these goals. First, it is difficult to envision how public confidence will be fostered if the State can, with a sleight of hand, switch the labels on one investigation from civil to criminal and back again, to suit its needs. Second, while we do not mean to suggest that there was any trickery on the part of the prosecutors, there is also no question that the defendant gave away the civil case, without her civil attorney's presence or consent. In addition, the defendant did not have the opportunity to obtain advice from her appointed civil attorney. Thus, application of the rule to this case furthers both of the purposes behind the rule.

By finding that the prosecutors had to contact defendant's civil attorney before questioning defendant, I am not finding that the civil attorney represented defendant for purposes of the criminal case. The criminal and civil cases arose out of the exact same set of facts. Thus, any evidence developed in the criminal case could, and would, be used in the civil case against defendant. I find only that, in order to effectively protect defendant's rights in the civil case, the civil attorney had to be present when the prosecutors questioned her client.

The majority relies heavily on <u>Moreno</u>, an Illinois Appellate Court case that found that the State could bring both criminal and civil charges arising out of the same set of facts. Slip op. at 10-11; <u>Moreno</u>, 319 Ill. App. 3d at 452-53. Certainly, the Cook County State's Attorney's office <u>can</u> bring two sets of charges against one defendant for one injury. But in order to effectively represent her client, the civil attorney needs to be present when the State's Attorney attempts to develop evidence to be used in her case. Thus, <u>Moreno</u>, does not dictate the outcome of this case because the issues are not the same.

In sum, Rule 4.2 should be applicable to this case because, first, application comports with the plain language of the rule; second, application furthers the purposes behind the rule; and third, <u>Moreno</u>, the case relied upon heavily by the majority, is inapposite. Slip op. at 10-11; <u>Moreno</u>, 319 Ill. App. 3d at 452-53. For these reasons, I would affirm the trial court's ruling, and thus I must dissent.

# REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT

**THE PEOPLE OF THE STATE OF ILLINOIS,**
    **Plaintiff-Appellant,**

**v.**

**EVELYN SANTIAGO,**
    **Defendant-Appellee.**

### No. 1-06-0476

**Appellate Court of Illinois**
**First District, First Division**

**Filed: September 8, 2008**

**JUSTICE GARCIA delivered the opinion of the court.**

**Wolfson, J., concurs.**
**R. Gordon, P.J., dissents.**

**Appeal from the Circuit Court of Cook County**
**Honorable Dennis J. Porter, Judge Presiding**

| | |
|---|---|
| **For PLAINTIFF - APPELLANT** | James E. Fitzgerald, Assistant State's Attorney, Of Counsel<br>Annette Collins, Assistant State's Attorney, Of Counsel<br>Christopher Petelle, Assistant State's Attorney, Of Counsel<br>Veronica Calderon Malavia, Assistant State's Attorney, Of Counsel |
| | **RICHARD A. DEVINE**<br>**State's Attorney of Cook County**<br>**Richard J. Daley Center–Room 309**<br>**Chicago, Illinois 60602** |

**For DEFENDANT -**  **Denise R. Avant, Assistant Public Defender**
 **APPELLEE**  **EDWIN A. BURNETTE**
  **Public Defender of Cook County**
  **69 W. Washington, 15th Floor**
  **Chicago, Illinois 60602**