Docket No. 107391.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. EVELYN SANTIAGO, Appellant.

*Opinion filed March 18, 2010.*

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

At issue in this case is Rule 4.2 of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 4.2). Rule 4.2, known as the "no contact" rule, has been amended effective January 1, 2010, but at the relevant time provided that, "[d]uring the course of representing a client a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter," unless certain exceptions are present. 134 Ill. 2d R. 4.2.

Defendant was the respondent in a juvenile court child protection case seeking to declare defendant's two children wards of the court, based upon injuries to defendant's daughter. An attorney was appointed to represent defendant in the child protection case.

Defendant later was arrested for child endangerment, based upon the same facts giving rise to the child protection case. Detectives and assistant State's Attorneys questioned defendant in the criminal case without contacting defendant's appointed attorney in the child protection case. The trial court held that the assistant State's Attorneys violated Rule 4.2, and therefore suppressed defendant's oral and written statements to the assistant State's Attorneys. The appellate court, with one justice dissenting, reversed the trial court. 384 Ill. App. 3d 784. We now affirm the appellate court.

BACKGROUND

On June 21, 2002, defendant's 13-month-old daughter, S.H., was taken to Norwegian American Hospital in Chicago with injuries to her genitals. On June 23, 2002, Detectives Auguste and Antol of the Special Victims Unit were assigned to investigate the injury, based on a child abuse hotline report. Detective Auguste spoke with defendant concerning the injury. Defendant told Auguste that she had been giving her two children a bath, and that S.H. was injured when she fell on a plastic sipping cup.

S.H. was initially examined by Dr. Bogolub. Dr. Bogolub said it was possible that S.H. sustained her injury in the manner claimed by defendant, but he also said that he could not rule out child abuse.

On June 25, 2002, Detective Auguste received a telephone call from Dr. Fujara, a child abuse expert at Cook County Hospital in Chicago. Dr. Fujara indicated that the injury was highly suspicious because the victim's labia minora were pulled, and had been removed with a sharp object, such as a knife or a scapel. Dr. Fujara said that the cut was very clean, and that there was no bruising indicative of a "straddle injury." Dr. Fujara's opinion was that S.H. had been abused.

On June 25, 2002, petitions for adjudication of wardship and motions for temporary custody of S.H. and her brother E.H. were filed in the child protection division of the circuit court of Cook County, by the juvenile division of the Cook County State's Attorney's office. That same day, attorney Melinda MacGregor was appointed attorney of record for defendant in the child protection cases.

On July 13, 2002, defendant took a polygraph examination and

failed. Detective Auguste interviewed defendant at the police station and confronted her with her polygraph results. Defendant then said that she gave her kids a bath, and when she walked away from the tub, she heard S.H. scream. When she returned to the tub, she noticed blood, as well as a sipping cup or a laundry detergent cap.

Detective Auguste interviewed Kevin H., the victim's biological father, on July 29, 2002. Kevin H. told Auguste that defendant had a history with DCFS as a victim of sexual abuse, and that defendant had been indicated as a sexual offender against a younger cousin. Auguste confirmed the accuracy of this information.

On August 27, 2002, Detective Auguste asked defendant to come to the police station. Around 11:25 a.m., Detectives Auguste and Antol read defendant her *Miranda* warnings and then questioned her. When Auguste asked defendant what happened, she repeated her previous account of the accident. Auguste then placed defendant under arrest for child endangerment. He also contacted the felony review division of the Cook County State's Attorney's office and requested that an assistant State's Attorney come to the station.

Assistant State's Attorney Barbara Plitz arrived at the police station around 2:45 p.m. Auguste, Plitz and Lieutenant Deloughery then interviewed defendant. Plitz introduced herself, explained that she was an assistant State's Attorney and not defendant's lawyer, and advised defendant of her *Miranda* rights. Defendant made no inculpatory statements at this interview.

When the interview was concluded, Deloughery and Plitz left the room, although Plitz remained at the station to do paperwork. Defendant, who remained in the room with Auguste, told Auguste that she thought he and Plitz were trying to get her to admit something that she did not do. Defendant told Auguste that she wanted an attorney. When Auguste relayed this information to Plitz, Plitz told Auguste that they could no longer talk to defendant, and that Plitz would make a note of defendant's request for the next assistant State's Attorney who handled the case.

Around 4 p.m., defendant called for Auguste and told him that she wanted to speak with assistant State's Attorney Plitz again. Auguste told defendant that Plitz had left, and that defendant would have to wait until another assistant State's Attorney could arrive.

Approximately an hour later, assistant State's Attorney Megan Meenan and Auguste met with defendant. Meenan explained to defendant that she was a prosecutor and not defendant's lawyer, and explained that she worked with Plitz. Meenan questioned defendant concerning defendant's request for a lawyer. Defendant told Meenan that she wanted to speak with her, so Meenan gave defendant her *Miranda* rights. Defendant stated that she understood her rights, and that she wanted to talk with Meenan and Auguste, and not to an attorney. Meenan testified at defendant's motion to suppress that she was aware there was a child protection case pending and that defendant's children had been removed from her custody. During this interview, defendant said that Aristede Brewer said he had "done it." Meenan terminated the interview, and Auguste attempted to verify defendant's claim.

Around 8 p.m., Meenan and Auguste reinterviewed defendant and told her that her story did not check out. Defendant then said that she was taking a bath with her children, and when she stepped out of the tub, her daughter tried to climb out, panicked, and fell back onto a floating detergent cap. This conversation ended around 9 p.m. Defendant was taken to lock up around 10 p.m.

Around 10 a.m. the next day, Detectives Gomez and Hattula interviewed defendant. Defendant was again advised of her *Miranda* rights. Defendant told these detectives that when she left the room while her son and S.H. were in the bathtub, she heard the sound of glass breaking. When she went back into the room, she saw S.H. bleeding from her vagina and saw her son holding the broken handle of a coffee mug or cup. The detectives chastised defendant for blaming her son and confronted her about changing her story. The detectives also confronted defendant with the medical evidence. The detectives again asked defendant if she had cut S.H. Defendant admitted that she had.

Assistant State's Attorney Plitz returned to the police station around 1 p.m. Plitz, along with Detectives Gomez and Hattula, spoke with defendant and again advised her of her *Miranda* rights. Defendant agreed to talk and eventually made an inculpatory statement.

Thereafter, defendant filed a motion to suppress her statements, and an amended motion to suppress. In the amended motion,

-4-

defendant argued that she was represented by attorney MacGregor in the child protection proceedings, and that attorney MacGregor was never contacted by the Chicago police department or the office of the Cook County State's Attorney during defendant's interviews, in violation of Rule 4.2. The State responded that Rule 4.2 did not prohibit a prosecutor from speaking to a criminal defendant in a preindictment setting just because there was a pending child protection court proceeding. The State noted that the child protection court case was never discussed, the prosecutors were generally unaware of the proceeding, and defendant's confession was not sought in connection with, or for admission in, the child protection court proceedings. The State also argued that suppression of defendant's confession was not an appropriate remedy for a violation of Rule 4.2.

With regard to defendant's claims concerning Rule 4.2, the trial court partially granted defendant's motion to suppress. Relying on *People v. White*, 209 Ill. App. 3d 844 (1991), the trial court held that Rule 4.2 applied to criminal cases as well as civil cases. Because defendant was represented by counsel in the child protection proceedings, the trial court held that Rule 4.2 was violated in this case, although the trial court found that the violation was not "willful." The trial court stated that, although the case numbers and purposes of the child protection court case and the criminal case were different, both cases involved the same facts. Therefore, the fact that defendant had an attorney in the child protection case was imputed to the prosecutors. Consequently, the prosecutors violated Rule 4.2 by talking with defendant without her child protection attorney present. However, the trial court denied defendant's motion to suppress the statements taken by the detectives because the detectives were not acting as "alter egos of the State's Attorney's office." The State subsequently filed a certificate of substantial impairment and notice of interlocutory appeal. 210 Ill. 2d R. 604(a)(1).

The appellate court, with one justice dissenting, reversed. 384 Ill. App. 3d 784 (2008). On appeal, the State argued that: (1) Rule 4.2 did not apply in criminal cases; (2) if Rule 4.2 did apply in criminal cases, the rule did not apply before the filing of formal charges; (3) if Rule 4.2 applied prior to the filing of formal charges, Rule 4.2 was not violated in this case because the criminal and child protection cases

were different "matters," or because the questioning at issue was authorized by law; and (4) if Rule 4.2 applied and was violated, the suppression of defendant's written statement was not the proper remedy for that violation.

The appellate court majority rejected the State's claim that Rule 4.2 did not apply in criminal cases. 384 Ill. App. 3d at 788. The appellate majority found the law unsettled concerning whether Rule 4.2 applied only after formal charges were filed, but held that there was no need to address this issue because it found that Rule 4.2 did not apply in this case. 384 Ill. App. 3d at 788-89. The majority held that Rule 4.2 did not apply because the child protection case and the criminal case were different "matters" for purposes of Rule 4.2. 384 Ill. App. 3d at 789.

The majority found the decision in *People v. Moreno*, 319 Ill. App. 3d 445 (2001), persuasive. In *Moreno*, the appellate court rejected the defendant's claim that the criminal charges against her should be dismissed based upon collateral estoppel, because the same factual issues giving rise to the criminal case were resolved in the defendant's favor in a juvenile case filed against defendant. *Moreno*, 319 Ill. App. 3d 445. *Moreno* held that the differences of purpose and goal in a juvenile proceeding and a criminal proceeding were "very real," and that important public policy reasons existed to prevent the application of collateral estoppel. *Moreno*, 319 Ill. App. 3d at 452.

The appellate court majority acknowledged that *Moreno* arose under different facts and addressed different issues than the instant case, but agreed with *Moreno*'s conclusion that juvenile and criminal proceedings are entirely different proceedings, serving different purposes and having different goals. 384 Ill. App. 3d at 790. Further, juvenile and criminal cases have different case numbers, are heard by different judges, and involve different employees of the State's Attorney's office. 384 Ill. App. 3d at 790. Moreover, proceedings under the Juvenile Court Act of 1987 (705 ILCS 405/1–5(1) (West 2006)) are not meant to be adversarial, in contrast to criminal proceedings. 384 Ill. App. 3d at 790.

The appellate majority further held that its conclusion was consistent with a commonsense reading of Rule 4.2. 384 Ill. App. 3d at 790. The majority noted that Rule 4.2 was written as a single sentence, and "matter," in the phrase "represented by another lawyer

in that matter," referred back to the subject of the representation. 384 Ill. App. 3d at 790. Here, the "subject of the representation" of attorney MacGregor was the child protection proceeding in which MacGregor was appointed. 384 Ill. App. 3d at 790. Therefore, the only "matter" in the latter phrase of Rule 4.2 was the child protection proceeding. 384 Ill. App. 3d at 790. "Matter" could not reference the criminal investigation because that investigation was not the "subject of the representation." 384 Ill. App. 3d at 790-91. Therefore, at the time defendant was questioned by the assistant State's Attorneys in the criminal investigation, she did not have counsel, so that Rule 4.2 was never triggered. 384 Ill. App. 3d at 792. Given its holding, the appellate court did not address the State's claims that the prosecutors' questioning fell within the "authorized by law" exception to Rule 4.2 and that suppression of defendant's statement was not a proper remedy for a violation of Rule 4.2. 384 Ill. App. 3d at 792.

The dissent disagreed, believing that Rule 4.2 applied in this case. 384 Ill. App. 3d at 792 (Gordon, P.J., dissenting). The dissent explained that:

> "One detective started one investigation against one defendant concerning one injury. Namely, on June 23, 2002, Detective Auguste started an investigation of one injury to defendant's daughter. From this one investigation into this one injury, one office of the State generated two sets of charges: one civil, one criminal. The one office was the Cook County State's Attorney's office. The incriminating information developed in this one investigation would be used by this one office to further both its civil and criminal charges.

> There is no way that defendant's civil defense attorney could protect the rights of her client in the civil case without being present during the interrogations of the defendant in this investigation." 384 Ill. App. 3d at 792 (Gordon, P.J., dissenting).

The dissent interpreted "that matter" in Rule 4.2 as referring to "the subject of the representation." 384 Ill. App. 3d at 793 (Gordon, P.J., dissenting). "The 'subject' or 'matter' about which the prosecutors questioned defendant was the injury that was the 'subject' of the civil attorney's appointment." 384 Ill. App. 3d at 793 (Gordon, P.J., dissenting). Therefore, defendant was represented by another lawyer

when the prosecutors questioned her about the subject of that representation. 384 Ill. App. 3d at 793 (Gordon, P.J., dissenting).

The dissent clarified that he was not finding that the civil attorney represented defendant for purposes of the criminal case. 384 Ill. App. 3d at 793 (Gordon, P.J., dissenting). Rather, the dissent was only finding that in order to effectively protect defendant's rights in the civil case, defendant's civil attorney had to be present when the prosecutors questioned defendant. 384 Ill. App. 3d at 793 (Gordon, P.J., dissenting).

This court allowed defendant's petition for leave to appeal. 210 Ill. 2d R. 315(a).


ANALYSIS

Before addressing the merits of defendant's appeal, we note that in its response brief, the State points out that after defendant filed her opening brief, this court amended the Rules of Professional Conduct, including Rule 4.2, effective January 1, 2010. The State concedes that the modifications to Rule 4.2 were not substantive, but rather were intended to clarify that Rule 4.2 applies to prosecutors prior to the filing of formal charges, thus eliminating two of the claims raised by the State in the appellate court and addressed by defendant in her opening brief. Accordingly, our review is limited to the remaining issues: whether Rule 4.2 was violated when attorney MacGregor was not contacted prior to questioning defendant in the criminal case; and if so, whether suppression of defendant's statement for a violation of Rule 4.2 was the proper remedy.

The interpretation of rules of this court are governed by the same principles that govern the interpretation of statutes. *People v. Campbell*, 224 Ill. 2d 80, 84 (2006). The goal is to ascertain and give effect to the intention of the drafters of the rule. *Campbell*, 224 Ill. 2d at 84. We begin with the language of the rule, which must be given its plain and ordinary meaning. *People v. O'Brien*, 197 Ill. 2d 88, 90 (2001). Where the language of the rule is clear and unambiguous, we will apply the rule as written without resort to further aids of statutory construction. *O'Brien*, 197 Ill. 2d at 90-91.

One of the fundamental principles of statutory construction is viewing all the provisions of an enactment as a whole. *O'Brien*, 197

Ill. 2d at 91. Words and phrases should not be construed in isolation, but must be interpreted in light of other relevant provisions of the statute. *O'Brien*, 197 Ill. 2d at 91. The interpretation of a supreme court rule, like the interpretation of a statute, is a question of law that we review *de novo*. *Campbell*, 224 Ill. 2d at 84.

Accordingly, we first look to the language of Rule 4.2. Rule 4.2 provides:

> "During the course of representing a client a lawyer shall not communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter unless the first lawyer has obtained the prior consent of the lawyer representing such other party or as may otherwise be authorized by law." 134 Ill. 2d R. 4.2.

The disagreement in this case turns on the phrases "the subject of the representation" and "that matter." Defendant argues that "the subject of representation" and "that matter" in this case were the injury to S.H. and defendant's culpability regarding the circumstances of that injury. Defendant claims that "the subject of the representation" is not the theory under which she may be culpable, but rather the facts supporting her culpability. Defendant maintains that there was such an integral relationship between the criminal and child protection cases that, pursuant to Rule 4.2, defendant's child protection attorney should have been contacted and allowed to be present when defendant was questioned by prosecutors concerning the criminal case.

The State counters that the use of the phrase "that matter," when read together with the introductory clause "during the course of representing a client" and the phrase "subject of the representation," indicates that the drafters intended the application of the rule to be case specific: specific to the matter in which the party is represented. Thus, because attorney MacGregor did not represent defendant in the criminal investigation, she had no right to be present or to object to the questioning of defendant in that investigation.

We agree with the State that a plain reading of Rule 4.2 demonstrates the rule was not violated in this case. Defendant focuses on the phrases "the subject of the representation" and "that matter" in

arguing that the "matter" and "the subject of the representation" was the injury to S.H. However, defendant fails to reconcile her interpretation of Rule 4.2 with the language of the rule as a whole.

The beginning language of Rule 4.2 provides that, "[d]uring the course of *representing* a client" a lawyer shall not communicate on the subject of the representation with "a party the lawyer knows to be *represented* by another lawyer in that matter" unless the first lawyer obtains the prior consent of the "lawyer *representing* such other party." (Emphases added.) 134 Ill. 2d R. 4.2. As the State argues, the phrases "the subject of the representation" and "that matter" refer back to the phrase "[d]uring the course of representing a client."

Notably, both the appellate court dissent and defendant concede that attorney MacGregor did not represent defendant for purposes of the criminal case. The dissent stated, "[b]y finding that the prosecutors had to contact defendant's civil attorney before questioning defendant, I am *not* finding that the civil attorney represented defendant for purposes of the criminal case." (Emphasis in original.) 384 Ill. App. 3d at 793 (Gordon, P.J., dissenting). Defendant argues that the "child protection attorney need not have ultimately represented [defendant] in the criminal case" in order for Rule 4.2 to apply here. However, the fact that attorney MacGregor did not represent defendant in the criminal case at the time prosecutors questioned her is fatal to defendant's claim that Rule 4.2 was violated in this case. As this court found in addressing a prior version of Rule 4.2, which contained the same relevant language, "Rule 7–104(a)(1) is designed to protect litigants *represented by counsel* from direct contacts by opposing counsel." (Emphasis added.) *In re Segall*, 117 Ill. 2d 1, 6 (1987). Because defendant was not represented by counsel in the criminal matter, Rule 4.2 did not prohibit the prosecutors from communicating with defendant in that case.

We find further support for our holding upon examining the language of Rule 4.2 in the context of the Rules of Professional Conduct as a whole. Statutory language is a reliable indicator of true meaning only when it is read in the context of the entire act. *People v. Trainor*, 196 Ill. 2d 318, 332 (2001). In *Trainor*, we noted that sections 3, 5 and 9 of the Sexually Dangerous Persons Act (725 ILCS 205/3.01 (West 1998)) must be read in conjunction with one another, construing the language of those sections in order to make them

harmonious and consistent, so that the words of the sections would not be read in a fashion that rendered other words or phrases meaningless, redundant, or superfluous. *Trainor*, 196 Ill. 2d at 332.

As the State argues, had the drafters of Rule 4.2 intended the parameters of the rule to be defined from a fact perspective rather than a case perspective, the drafters would have included language to that effect. In fact, other rules in the Illinois Rules of Professional Conduct do use the broader phrases "same or substantially related matter" or "the subject matter" of the representation.

For example, Rule 1.8(b) of the Rules of Professional Conduct provides:

> "(b) Unless all aspects of the matter giving rise to the employment have been concluded, a lawyer shall not enter into any arrangement or understanding with a client or a prospective client by which the lawyer acquires an interest in publication, media, or other literary rights *with respect to the subject matter of employment* or proposed employment." (Emphasis added.) 134 Ill. 2d R. 1.8(b).

Similarly, Rule 1.9(a)(1) states that:

> "(a) A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> > (1) represent another person *in the same or a substantially related matter* ***." (Emphasis added.) 134 Ill. 2d R. 1.9(a)(1).

Rule 1.10(b) also uses the phrase "same or substantially related matter" in providing that:

> "(b) When a lawyer becomes associated with a firm, the firm may not represent a person in a matter that the firm knows or reasonably should know is *the same or substantially related to a matter* in which the newly associated lawyer, or a firm with which that lawyer was associated, had previously represented a client whose interests are materially adverse to that person [.]" (Emphasis added.) 134 Ill. 2d R. 1.10(b).

It is well settled that, "by employing certain language in one instance and wholly different language in another, the legislature indicates that different results were intended." *In re K.C.*, 186 Ill. 2d 542, 549-50 (1999). Thus, because the drafters of Rule 4.2 did not

include the words "subject matter" or "same or a substantially related" matter in the rule, we presume that the omission was deliberate. We therefore decline to adopt such a broad reading of Rule 4.2. The appellate court majority properly found that Rule 4.2 was not triggered in this case because defendant was not represented by counsel when she was questioned by the prosecutors.

In so holding, we note that other jurisdictions addressing similarly worded "no contact" rules have also held that the rule requires an attorney-client relationship with respect to the matter at issue. Thus, in *United States v. Ford*, 176 F.3d 376, 382 (6th Cir. 1999), the court held that prosecutors' contact with the defendant, with regard to an offense other than the offense for which the defendant was indicted, did not violate Kentucky Supreme Court Rule of Professional Conduct 4.2 because the contact did not pertain to "the subject of the representation" as set forth in Kentucky's Rule 4.2.

Likewise, in *Miano v. AC&R Advertising, Inc.*, 148 F.R.D. 68 (S.D.N.Y. 1993), the defendant sought to preclude tape-recorded conversations from introduction into evidence, claiming that the tapes were obtained in violation of applicable no contact rules, which contained wording identical to the wording of this court's Rule 4.2. The court stated that it could not conclude that plaintiff's attorney knew defendant to be represented by counsel in the relevant matter. *Miano*, 148 F.R.D. At 79. The court rejected the defendant's claim that:

> "simply because it made use, on an as needed basis, of the services of various attorneys, that it should therefore be deemed to have been represented in this matter prior to [the law firm's] retention. On that theory, any person or entity which faced potential liability because of its conduct, could be considered to be 'represented' as long as it had utilized an attorney's services in the past on other matters. Something more must be required to deem a party 'represented' under the disciplinary rule." *Miano*, 148 F.R.D. at 79.

See also *Miller v. Material Sciences Corp.*, 986 F. Supp. 1104 (N.D. Ill. 1997) (Illinois Rule of Professional Responsibility 4.2 was not violated when plaintiff's attorney in federal class action claim contacted party who was represented in a related Securities and Exchange Commission investigation, because party was not

represented in federal class action, and plaintiff's attorney was entitled to rely on party's insistence that he was not represented).

Because we find that Rule 4.2 was not violated in this case, we need not address defendant's remaining arguments that the prosecutors should have known that defendant had counsel and that the trial court properly suppressed defendant's statements to the prosecutors for violation of Rule 4.2.

CONCLUSION

For all of the foregoing reasons, we affirm the judgment of the appellate court, reversing the circuit court of Cook County's order and remanding this cause to the circuit court for further proceedings.

*Appellate court judgment affirmed*.