# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re W.R.*, 2012 IL App (3d) 110179

---

| | |
|---|---|
| Appellate Court Caption | *In re* W.R., E.H., and V.R., Minors (The People of the State of Illinois, Petitioner-Appellant, v. Keisha C., Respondent-Appellee). |
| District & No. | Third District<br>Docket No. 3-11-0179 |
| Filed | March 12, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a neglect case based on allegations that respondent mother allowed a sex offender to pick up her children from day care and have unsupervised contact with them, the trial court properly granted the mother a new trial due to a *per se* conflict of interest arising from the discovery that one of the respondent-fathers was represented by an attorney who had mediated a prior family dispute between the father and respondent mother, since the mother had standing to seek a new trial based on the conflict of interest and a new trial was appropriate with regard to the children of all of the fathers, especially when the parties to the two cases were the same, the three-year gap between the cases was not long enough to preclude considering the cases being about the same matter, and under those circumstances, Rule 1.12(a) of the Illinois Rules of Professional Conduct applied. |
| Decision Under Review | Appeal from the Circuit Court of Will County, Nos. 08-JA-200, 08-JA-202, 08-JA-203; the Hon. Paula A. Gomora, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

James Glasgow, State's Attorney, of Joliet (Terry A. Mertel and Gary F. Gnidovec, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Gregory M. Reeder, of Steven H. Mevorah & Associates, of Lombard, for appellee Keisha C.

Stephanie Speakman, of Mokena, and Lea Drell, Assistant Public Defender, of Joliet, and Timothy McGrath, of Manhattan, for appellee Wallace Rowe, Sr.

Victoria McKay Kennison, of Law Office of Edward R. Jaquays, of Joliet, for appellee Mark Hendrix.

Neil J. Adams, of Joliet, for appellee Vincent Robinson.

Edward P. Graham, of Law Offices of Edward P. Graham, of Naperville, guardian *ad litem*.

Panel

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices O'Brien and Wright concurred in the judgment and opinion.

## OPINION

¶ 1      This matter comes before this court on an interlocutory appeal pursuant to Illinois Supreme Court Rule 306(a)(1) (eff. Feb. 16, 2011). The State appeals the trial court's order granting the respondent-mother, Keisha C., a new trial due to a *per se* conflict of interest. Specifically, the trial court found that a *per se* conflict of interest existed under Rule 1.12(a) of the Illinois Rules of Professional Conduct (Ill. Rs. Prof'l Conduct R. 1.12(a) (eff. Jan. 1, 2010)) because one of the respondent-fathers was represented by an attorney who had mediated a prior family court case between the respondent-father and respondent-mother. On appeal, the State argues that: (1) Rule 1.12(a) does not apply to this case; (2) even if the rule does apply, there is no *per se* conflict of interest; and (3) the respondent-mother did not have standing to complain about the alleged conflict of interest. We affirm.

¶ 2                                    FACTS

¶ 3        On August 28, 2008, the State filed petitions alleging that the minors, W.R., E.H., and V.R., were neglected because their environment was injurious to their welfare. The basis of the petition was that the respondent-mother had allowed a convicted sex offender to pick up her children from day care and have unsupervised contact with them.

¶ 4        Attorney Lea A. Drell was appointed to represent W.R., Sr., father of W.R., in the juvenile court proceeding. On April 14, 2009, Drell filed a motion for custody for W.R. In that motion, Drell asserted that W.R. had eczema "all over his body" when he came to live with the respondent-father but that it was "now almost cleared up through the actions of [W.R., Sr.]" The motion further alleged that W.R. had been integrated into his father's family.

¶ 5        The matter proceeded to an adjudicatory hearing on March 2, 2010. During the hearing, Drell asked the respondent-mother a series of questions about W.R. to show "that her level of involvement with her child [was] very little."

¶ 6        At closing arguments, Drell recommended that W.R., Sr., be given custody of his son, and she argued that W.R. had been given stability over the past two years. The guardian *ad litem* (GAL) also recommended that the respondent-father should receive custody of W.R. During her closing argument, the GAL referred to a prior family court case to argue that the court may be an appropriate forum for the respondent-mother to seek visitation once the case was closed. The trial court then questioned the attorneys with regard to the prior family court case, and Drell revealed that she had been the mediator in that case involving the respondent-mother and W.R., Sr.

¶ 7        The parties took a break to investigate the matter further. The State produced a document showing the result of the mediation and the agreement regarding the custody of the minor. The State then said, "I think some interest could have been affected if there [was] a conflict of interest, not the State's interest, but apparently there are two parents at odds with the request for a disposition in this case regarding [W.R.]" Drell apologized to the court, and responded that she had not recognized any of the parties. She further explained that, "I assume [the parties] came to see me once. And we had an agreement. And that was it."

¶ 8        The GAL added:

"Judge, looks from the document that the appointment was made June 21st, 2005 to mediate the issues of custody and visitation.

    And then sometime shortly after that, July 28th of '05, a mediation agreement was entered. And then there is no reference any further even though there are some other proceedings in 2008 and 2009. It doesn't look like any further."

¶ 9        The case was continued November 9, 2010, in an effort to secure informed consent from the parties. The respondent-mother did not give her consent, and instead she filed a motion for a new trial based on a violation of Rule 1.12 of the Rules of Professional Conduct. After a hearing on the motion, the trial court found:

"[A]fter reading the case law *** what has happened is that after it was discovered that *** Drell was also the mediator in a custody proceeding between [the respondent-

mother] and [W.R., Sr.], and she didn't even remember that she was the mediator–she was not your attorney in that proceeding. However, the information that she could have known from that proceeding if she recalled could transfer."

¶ 10 The trial court concluded that there was no evidence that Drell's representation had prejudiced W.R., Sr., but that there was a *per se* conflict of interest and thus a new trial was required. The State appealed.

¶ 11                                                    ANALYSIS

¶ 12                                    I. Applicability of Rule 1.12(a)

¶ 13 The State's first argument on appeal is that the parties and trial court erred by assuming that Rule 1.12 of the Rules of Professional Conduct applied to the case. Rule 1.12(a) reads:

"[A] lawyer shall not represent anyone in connection with *a matter* in which the lawyer participated personally and substantially as a judge or other adjudicative officer or law clerk to such a person or as an arbitrator, mediator or other third-party neutral, unless all parties to the proceeding give informed consent." (Emphasis added.) Ill. Rs. Prof'l Conduct R. 1.12(a) (eff. Jan. 1, 2010).

¶ 14 The State contends that the juvenile neglect case was not the same "matter" as the family court case, and thus Drell was not prohibited from representing one of the parties in a later proceeding. In other words, the State argues a narrow, case-specific reading of the word "matter," and, under such an application, the juvenile neglect proceeding is not the same "matter" as a custody and support action in family court.

¶ 15 Illinois Supreme Court rules are interpreted under the same principles that govern the interpretation of statutes. *People v. Santiago*, 236 Ill. 2d 417 (2010). If the language of the rule is clear and unambiguous, the rule will be given its plain and ordinary meaning without resorting to further aids of statutory construction. *Id.* at 428. In addition, "[o]ne of the fundamental principles of statutory construction is viewing all the provisions of an enactment as a whole." *Id.* Words and phrases in a rule should be "interpreted in light of other relevant provisions of the statute." *Id.*

¶ 16 As an initial matter, we note that "matter" is not defined anywhere in Rule 1.12 or the supporting comments. Therefore, we look to other parts of the Rules of Professional Conduct to assist us in interpretation.

¶ 17 Comment 1 to Rule 1.12 states that the rule "generally parallels Rule 1.11," which is the rule governing conflicts of interest for current or former government employees. Ill. Rs. Prof'l Conduct R. 1.12(a) cmt. 1 (eff. Jan. 1, 2010). In fact, Rule 1.11 and Rule 1.12 have been interpreted together and have been found to have "similar prohibitions." *Illinois Wood Energy Partners, L.P. v. County of Cook*, 281 Ill. App. 3d 841, 853 (1995).

¶ 18 Rule 1.11 defines "matter" as "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties." Ill. Rs. Prof'l Conduct R. 1.11(e) (eff. Jan. 1, 2010). More importantly, comment 10 to Rule 1.11 provides:

"For purposes of paragraph (e) of this Rule, a 'matter' may continue in another form. In determining whether two particular matters are the same, the lawyer should consider the extent to which the matters involve the same basic facts, the same or related parties, and the time elapsed." Ill. Rs. Prof'l Conduct R. 1.11 cmt. 10 (eff. Jan. 1, 2010).

¶ 19    Accordingly, we reject the State's argument that a "matter" as used in Rule 1.12 necessarily means the same case or same proceeding. Comment 10 to Rule 1.11 clearly anticipates that a matter "may continue in another form" and therefore may not be the same case. Instead, we must consider the extent to which the juvenile neglect case and family court case share the same basic facts, the same or related parties, and the time elapsed.

¶ 20    At first blush, the two proceedings do not seem to share the same basic facts. The juvenile neglect case concerned an allegation that the respondent-mother had allowed a convicted sex offender to pick up her children from day care, whereas the family court case dealt with issues of custody and visitation. However, the record reveals that the issues of custody and visitation were present throughout the juvenile court proceedings. Approximately seven months after the neglect petition was filed, Drell filed a motion for custody of W.R. on behalf of the respondent-father. That motion alleged that W.R. had been living with his father since August 2008, he was enrolled in school full time, and he had eczema all over his body when he came to live with his father which had cleared up. Throughout the course of the juvenile case, the respondent-father also expressed his desire to have custody of W.R.

¶ 21    Moreover, the parties between the two cases are the same. The respondent-mother and W.R., Sr., were both parties in the family court case, and they continued to be parties in the juvenile neglect case.

¶ 22    Finally, we note that approximately three years had elapsed between Drell's service as a mediator on the family court case and the initiation of the neglect proceedings. While it is unclear how much time must elapse in order for cases not to be considered the same matter, we believe that a three-year gap is not enough time between the two cases. Any information Drell would have learned in her role as a mediator three years prior would still potentially be relevant in the juvenile case in her effort to have custody awarded to W.R., Sr. *In re J'America B.*, 346 Ill. App. 3d 1034, 1043-44 (2004) (stating "a trial court must be free to examine all of the circumstances, evidence, prior facts, prior orders, and other relevant information in order to arrive at a correct conclusion concerning parental fitness"). Furthermore, according to the statements of the GAL, the family court case was revived in 2008 and 2009 for some additional proceedings, although there was no indication Drell served as a mediator during that time.

¶ 23    It is also worth noting that this case is distinguishable from *Santiago*, a case cited by the State in support of its argument. In that case, the defendant's daughter was taken to the hospital for injuries to her genitals. *Santiago*, 236 Ill. 2d 417. Shortly thereafter, petitions for adjudication of wardship and motions for temporary custody were filed. *Id.* The defendant was appointed an attorney to represent her in those matters. *Id.* The defendant was later interviewed by an assistant State's Attorney regarding the criminal repercussions of the case, and the defendant made an inculpatory statement. *Id.* She subsequently filed a motion to

suppress the statement, arguing that it was obtained in violation of Rule 4.2 (Ill. Rs. Prof'l Conduct R. 4.2 (eff. Jan. 1, 2010)) because the defendant was represented by counsel in the child protection case and thus the prosecutor could not talk to her without her attorney being present. *Santiago*, 236 Ill. 2d 417.

¶ 24 Rule 4.2 prohibits a lawyer from communicating with a client that the lawyer knows to be represented by another lawyer "in the matter."[1] *Id.* at 425-26. Thus, our supreme court recognized that the case depended upon the interpretation of "matter" as used in Rule 4.2, and specifically whether the criminal case and child protection case could be construed as the same matter. *Id.* at 426. Similar to the present case, the State in *Santiago* urged for a case-specific reading of the word "matter" and argued that the two cases were different matters. *Id.* The defendant argued that the cases were the same matter, in that both concerned an injury to the defendant's daughter. *Id*. at 429. Our supreme court characterized the difference as one between a "fact perspective" and a "case perspective" approach. *Id.* at 431.

¶ 25 The court reflected that there were other rules in the Rules of Professional Conduct that used broader phrases such as " 'same or substantially related matter' " or " 'the subject matter' " to indicate that the drafters intended a more fact specific approach in those situations. *Id.* at 431. However, the drafters of Rule 4.2 did not include these words, and instead used only the word "matter." The court believed that the omission was deliberate, and therefore Rule 4.2 should not be interpreted as broadly as some of the other rules. Accordingly, the criminal case and juvenile neglect case were considered separate matters under Rule 4.2.

¶ 26 In the instant case, when examining Rule 1.12, it is true that the drafters did not use "same or substantially related matter" or "subject matter" and instead used only the word "matter." However, comment 10 to a parallel Rule 1.11 is explicit that a "matter" may continue in another form. Thus, there is support for a broader interpretation of Rule 1.12 compared to Rule 4.2, and we find that Rule 1.12 applies in this case for the reasons described above.

¶ 27 II. *Per Se* Conflict of Interest

¶ 28 The next issue to be addressed is whether a violation of Rule 1.12 creates a conflict of interest and, if it does, whether it creates a conflict *per se*. Under a *per se* conflict of interest, the respondent-mother would not have to prove that she was prejudiced by Drell's representation of W.R., Sr. *People v. Morales*, 209 Ill. 2d 340 (2004). However, if there is not a *per se* conflict, then the respondent-mother would have to prove that she was actually prejudiced by Drell's representation of W.R., Sr. *Id.* We review whether counsel labored under a *per se* conflict under the *de novo* standard of review. *In re S.G.*, 347 Ill. App. 3d 476 (2004).

---

[1]Rule 4.2 reads, "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Ill. Rs. Prof'l Conduct R. 4.2 (eff. Jan. 1, 2010).

¶ 29    Section 1-5 of the Juvenile Court Act of 1987 (Act) states that minors and their parents have the right to be represented by counsel in a juvenile proceeding. 705 ILCS 405/1-5 (West 2008). Illinois courts have applied the same *per se* conflict analysis available in criminal cases to juvenile court proceedings. See, *e.g.*, *S.G.*, 347 Ill. App. 3d 476. In the criminal context, our supreme court has identified three *per se* conflicts requiring reversal: (1) defense counsel has a prior or contemporaneous association with the victim, the prosecution, or an entity assisting the prosecution; (2) defense counsel contemporaneously represents a prosecution witness; or (3) defense counsel is a former prosecutor who had been personally involved in the defendant's prosecution. *People v. Hernandez*, 231 Ill. 2d 134 (2008). The "threshold inquiry in any conflict-of-interest case is whether, in fact, defense counsel represented or represents a party with conflicting interests to those of the defendant." *People v. Graham*, 206 Ill. 2d 465, 472 (2003).

¶ 30    In *S.G.*, the court found that a *per se* conflict of interest existed when the GAL for the minors was later appointed to represent the respondent-mother in the same proceeding. The State argued that there was no *per se* conflict of interest because the attorney's appointment as the GAL was brief, and he only represented them at the shelter care hearing. *S.G.*, 347 Ill. App. 3d 476. The court declined to find that no conflict of interest existed. *Id.* The court stressed that any party in a proceeding brought pursuant to the Act was afforded the same standard of representation as that of a criminal defendant. *Id.* Furthermore, because the case involved court-appointed counsel, it demanded even stricter scrutiny for conflicts of interest. *Id.* The court stated, "[o]ur concern is with the opinions [the attorney] had already formulated about the 'best interests of the children' when representing them and how those opinions might adversely impact his ability to later effectively represent [the respondent-mother] with 'undivided loyalty.' " *Id.* at 481. Finding that it was impossible to tell whether counsel may have been adversely impacted by the prior representation, the court reversed for new proceedings. *Id.* at 482.

¶ 31    The case of *In re Darius G.*, 406 Ill. App. 3d 727 (2010), is even more on point. In that case, the court found a *per se* conflict of interest when an attorney who represented the respondent-mother later appeared as a GAL on behalf of the minor. The court first noted that, as opposed to *S.G.*, the attorney at issue represented the mother first instead of the other way around. *Id.* While "the prejudice to respondent here [was] less obvious," the court ultimately found that the respondent-mother's right to conflict-free representation was prejudiced once her attorney represented the minor. *Id.* at 735.

¶ 32    The court assumed that the attorney "at a minimum interviewed [the respondent-mother] and reviewed her file." *Id.* at 735. As such, if the attorney "concluded from this confidentially gleaned information that respondent was unfit or that her rights should be terminated, he was subsequently placed in the unique position of being able to *use* this information when he represented [the minor]." (Emphasis in original.) *Id.* at 735. The court expressed concern that there was a possibility that these circumstances impaired the attorney's ability to represent either client with undivided loyalty. *Id.* at 733.

¶ 33    We believe that this case is similar to *Darius G.* Although Drell never represented the respondent-mother, she was once in a position to access information about her and possibly form an opinion as to which parent should have custody of W.R. Comment 3 to Rule 1.12

states:

> "Although lawyers who serve as third-party neutrals do not have information concerning the parties that is protected under Rule 1.6, *they typically owe the parties an obligation of confidentiality under law or codes of ethics governing third-party neutrals*." (Emphasis added.) Ill. Rs. Prof'l Conduct R. 1.12 cmt. 3 (eff. Jan. 1, 2010).

¶ 34    While we do not know the exact information Drell had available to her during mediation, we do not think it serves the interests of future mediations if clients know that information disclosed during the process could later be used against them. In fact, the protection may be even more important in mediation, which is an environment where the parties are not adversaries and which, instead, is effective only when both parties are cooperating. *In re Marriage of Duffy*, 307 Ill. App. 3d 257 (1999). The parties, who may not be represented by counsel, may reveal information in the spirit of cooperation that later could be used against them.

¶ 35    In addition, we cannot ignore Drell's zealous advocacy on behalf of W.R., Sr. Drell, in her position as W.R., Sr.'s attorney, took an adversarial position to that of the respondent-mother and in that role sought to have custody granted to her client. This required her to file a motion for custody on W.R., Sr.'s behalf, in which she alleged that the minor had eczema all over his body when he came to live with his father. Moreover, during her cross-examination of the respondent-mother at the adjudicatory hearing, she sought to establish that the respondent-mother did not know the minor well at all. While we do not seek to criticize Drell, and in fact the record reveals that she competently advocated on her client's behalf, we cannot help but conclude that there is the appearance of impropriety when an attorney who formerly served as a mediator later attacks one of the parties in the same matter. See *People v. Lang*, 346 Ill. App. 3d 677 (2004) (it is important for the judicial system to avoid the appearance of impropriety).

¶ 36                              III. Standing

¶ 37    The State also argues that the respondent-mother lacked standing to complain about the conflict of interest because the conflict belonged to W.R., Sr. Specifically, the State alleges that, if Drell was laboring under a conflict of interest, it was W.R., Sr., who suffered and not the respondent-mother.

¶ 38    The argument is without merit. "The doctrine of standing is designed to preclude persons who have no interest in a controversy from bring [a law]suit." *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999). Standing ensures that only those who have a real interest in the outcome are party to the case or controversy. *Id.*

¶ 39    In the instant case, as described above, the respondent-mother has an interest in not having Drell serve as an attorney for W.R., Sr. She did not raise a claim on behalf of anyone else, including W.R., Sr., but rather sought a new trial because of an alleged harm to herself. *Macknin v. Macknin*, 404 Ill. App. 3d 520 (2010). Consequently, we find that she had standing to file a motion for a new trial based on a conflict of interest.

## IV. Scope of Review

The State's final argument on appeal is that the trial court erred by also awarding a new trial with regard to E.H. and V.R. Specifically, the State contends that Drell's violation of Rule 1.12(a) had nothing to do with the other two minors. However, by the very nature of a *per se* conflict of interest, we do not know what happened off the record that could potentially harm the respondent-mother, such as off-the-record conversations between counsel. *Darius G.*, 406 Ill. App. 3d 727. Therefore, a new trial is appropriate with regard to all of the minors.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed.

Affirmed.