# Illinois Official Reports

## Appellate Court

---

### *In re Br. M.*, 2020 IL App (3d) 190603

---

| | |
|---|---|
| Appellate Court Caption | *In re* Br. M. and Bo. M., Minors (People of the State of Illinois, Petitioner-Appellee, v. Wendy M., Respondent-Appellant). |
| District & No. | Third District<br>Nos. 3-19-0603, 3-19-0604 cons. |
| Filed | March 6, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Will County, Nos. 13-JA-111, 16-JA-111; the Hon. Paula Gomora, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Kristen Messamore, of Hammel Law Offices, P.C., of Joliet, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Thomas D. Arado, and Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Neil J. Adams, of Joliet, for minors-appellees. |

PRESIDING JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justice Holdridge concurred in the judgment and opinion.
Justice Wright dissented, with opinion.

**OPINION**

¶ 1    Respondent, Wendy M., appeals from an order of the circuit court, terminating her parental rights to her children, Br. M. and Bo. M. On appeal, she argues that (1) a conflict of interest exists because her attorney served as the guardian *ad litem* (GAL) for Br. M. in earlier proceedings, (2) the trial court failed to admonish respondent of her right to appeal the dispositional order, and (3) the court's unfitness and best interest findings were against the manifest weight of the evidence. We hold that the *per se* conflict of interest rule applies and reverse and remand for new proceedings.

¶ 2                                    I. BACKGROUND

¶ 3    On August 9, 2013, the State petitioned the trial court to find Br. M. (born December 13, 2006) a neglected minor under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-1 *et seq.* (West 2012)). Assistant Public Defender Gail Bembnister was appointed to represent respondent, and Assistant Public Defender Lea Drell was appointed as GAL for Br. M.

¶ 4    At the shelter care hearing, the facts presented by the State revealed that respondent had been arrested and was in custody on felony charges. The State also alleged that respondent had substance abuse issues that required treatment. Respondent stipulated to facts as presented. The court found probable cause to believe that the minor was neglected and placed Br. M. in the temporary custody of the Department of Children and Family Services (DCFS).

¶ 5    At the adjudicatory hearing, respondent stipulated to the neglect petition. The trial court accepted respondent's stipulation and found that Br. M. was neglected due to respondent's incarceration and her substance abuse issues. The court adjudicated Br. M. a neglected minor, and custody and guardianship remained with DCFS.

¶ 6    On January 17, 2014, at the dispositional hearing, the State asked the court to find respondent unfit and argued that it was in Br. M.'s best interest to be made a ward of the court. Drell, acting on behalf of Br. M., joined in the State's argument, noting that respondent would be incarcerated until 2015. The trial court found respondent unfit, made Br. M. a ward of the court, and placed the minor in the custody of DCFS. In reaching its decision, the court noted that respondent's release date was May 2014.

¶ 7    On August 14, 2014, Bembnister filed a motion to restore respondent's fitness. At the hearing, Bembnister appeared on respondent's behalf and stated that she had talked to Drell, who had no objection to the motion. The trial court found that it was in Br. M.'s best interests that respondent's fitness be restored. Based on that finding, the court terminated DCFS's custody and guardianship.

¶ 8    On September 9, 2014, the State filed a supplemental petition in Br. M.'s case (No. 13-JA-111), alleging that Br. M. was neglected in that her environment was injurious to her welfare.

The trial court named a court appointed special advocate (CASA) as GAL for the minor. The State did not seek shelter care and, one month later, withdrew the petition.

¶ 9 Two years later, on September 26, 2016, the State filed a second supplemental petition in case No. 13-JA-111, alleging that Br. M. was neglected. The State filed a companion case (No. 16-JA-111), alleging that Br. M.'s half-brother, Bo. M. (born February 21, 2015), was also neglected. The shelter care hearing was held instanter. Assistant Public Defender Lea Norbut accepted appointment on respondent's behalf. At the conclusion of the hearing, the court found probable cause to believe that the minors were neglected based on respondent's continued substance abuse issues. The court also found an immediate and urgent necessity to place both children in the temporary custody of DCFS.

¶ 10 At the adjudicatory hearing on December 16, 2016, the father of Bo. M. appeared for the first time. The public defender's office was appointed to represent him. The docket indicates that Assistant Public Defender Norbut accepted the appointment on behalf of Assistant Public Defender Patricia Adair. The order states that Norbut represented the father at the hearing and indicates that respondent waived the hearing and stipulated to the allegations in the petition. The record indicates that respondent stipulated to the fact that she had substance abuse issues and that Bo. M.'s father was incarcerated. The court found that the children were neglected in that their environment was injurious to their welfare and gave statutory admonishments to both respondent and the father.

¶ 11 At the dispositional hearing, respondent and Bo. M.'s father appeared. Respondent was represented by Assistant Public Defender Colette Safford. Bo. M.'s father was represented by Assistant Public Defender Bart Markese, standing in for Adair. The court found the parents to be unfit, made the children wards of the court, and awarded custody and guardianship to DCFS. The trial court admonished the parents to comply with the service plan or risk termination of their parental rights.

¶ 12 On December 14, 2017, the State filed petitions to terminate parental rights in case No. 13-JA-111 and case No. 16-JA-111. Assistant Public Defender Safford accepted appointment as respondent's counsel, and CASA remained the GAL for both children. The record indicates that Assistant Public Defender Norbut accepted appointment for Bo. M.'s father.

¶ 13 The petitions alleged that, pursuant to the Adoption Act (750 ILCS 50/1 *et seq.* (West 2016)), respondent and the fathers were unfit in that they failed to (1) maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare (*id.* § 1(D)(b)), (2) protect the children from conditions within their environment injurious to the children's welfare (*id.* § 1(D)(g)), (3) make reasonable efforts to correct the conditions that were the basis for the removal of the children (*id.* § 1(D)(m)(i)), and (4) make reasonable progress toward the return of the children within nine months after the adjudication of neglect, that is, from December 20, 2016, to September 20, 2017 (*id.* § 1(D)(m)(ii)).

¶ 14 On March 21, 2018, the court gave Lea Drell leave, as private counsel, to file her appearance on respondent's behalf. No mention of Drell's prior representation of Br. M. was made in court.

¶ 15 The petitions were called for a fitness hearing on October 16, 2018. At the hearing, DCFS case manager Josie Garcia testified that she had been working with the family since March 2017. She noted that respondent had been treated several times for substance abuse. She received inpatient services as well as outpatient services. In July 2017, respondent entered a 30-day residential treatment program but left after 10 days. Outpatient services were offered

as an alternative, but respondent declined. Garcia testified that respondent continued to refuse treatment services between July 2017 and December 2017. Respondent was arrested on April 11, 2018, and released from detention on June 21, 2018.

¶ 16　During her testimony, the prosecutor asked Garcia if Br. M. had been removed from respondent's care in the past. Drell objected on the basis of relevancy. The court overruled the objection, finding that the question was relevant to the issue of parental fitness. Garcia then responded that she was not familiar with the family's prior history.

¶ 17　The trial court found by clear and convincing evidence that respondent was an unfit parent. The court found that respondent (1) failed to maintain a reasonable degree of interest, concern, or responsibility, (2) failed to make reasonable efforts to correct the conditions that were the basis of removal, and (3) failed to make reasonable progress toward the children's return from December 20, 2016, to September 20, 2017.

¶ 18　On January 25, 2019, Drell requested leave to withdraw as respondent's counsel for medical reasons, which the trial court granted. Respondent then elected to have the public defender's office represent her for the remainder of the case, and Assistant Public Defender Margaret Naal was appointed as her attorney.

¶ 19　At the best interest hearing on September 5, 2019, the CASA advocate supervisor testified that Bo. M. was four years old and had been placed in a traditional foster home. The foster parents demonstrated a strong bond with Bo. M., and they wanted to adopt him. Br. M. was 12 years old and was living in a therapeutic foster home through Lutheran Social Services. Br. M. and her foster mother had a healthy and positive relationship. Although her foster mother did not sign an intent to adopt form, she did express a desire to provide Br. M. with permanency.

¶ 20　The trial court found that the State proved the allegations in the petitions by a preponderance of the evidence and that it was in the best interests of the minors that respondent's parental rights be terminated. The court entered judgment terminating the parental rights of respondent and both fathers and awarded custody and guardianship to DCFS with the power to consent to adoption.

¶ 21　　　　　　　　　　　　　　　II. ANALYSIS

¶ 22　Respondent contends that Drell's status as the GAL for Br. M. in the neglect proceedings and her subsequent representation of respondent in the termination proceedings created a *per se* conflict of interest that rendered counsel's assistance ineffective. We review whether counsel labored under a *per se* conflict of interest under the *de novo* standard of review. *In re W.R.*, 2012 IL App (3d) 110179, ¶ 28.

¶ 23　Although respondent did not raise this issue before the trial court, forfeiture is a limitation on the parties, not the reviewing court. *In re D.F.*, 208 Ill. 2d 223, 239 (2003). In this case, we relax the forfeiture rule to address a plain error affecting the fundamental fairness of the juvenile proceeding and to reach a fair and just result. *In re Darius G.*, 406 Ill. App. 3d 727, 732 (2010); *In re S.G.*, 347 Ill. App. 3d 476, 482 (2004).

¶ 24　Under the Juvenile Court Act, minors and their parents have the right to be represented by counsel in a juvenile proceeding. 705 ILCS 405/1-5 (West 2016). A parent's right to counsel entitles her to the " 'undivided loyalty' " of her attorney. *S.G.*, 347 Ill. App. 3d at 479 (quoting *In re Lackey*, 71 Ill. App. 3d 705, 707 (1979)). To protect that right, courts have held that counsel may not represent conflicting interests or undertake the discharge of inconsistent

duties. See *W.R.*, 2012 IL App (3d) 110179, ¶ 35; *Darius G.*, 406 Ill. App. 3d at 735; *S.G.*, 347 Ill. App. 3d at 481.

¶ 25    The same *per se* conflict of interest rule that originated in criminal law applies to proceedings under Juvenile Court Act. *W.R.*, 2012 IL App (3d) 110179, ¶ 29. A *per se* conflict arises when a defense attorney has ties to a person that would benefit from an unfavorable verdict for the defendant because the attorney's knowledge of her other client's favorable result might conflict with the defendant's interest and affect counsel's performance in ways that are difficult to detect. *Darius G.*, 406 Ill. App. 3d at 732 (citing *People v. Hernandez*, 231 Ill. 2d 134, 142-43 (2008)). Illinois courts have applied the *per se* rule where the defendant's attorney previously appeared in the same proceeding on behalf of the prosecution (*People v. Kester*, 66 Ill. 2d 162 (1977)) and where a mother's court-appointed attorney previously represented the children as the GAL in the same juvenile proceeding (*S.G.*, 347 Ill. App. 3d at 481). When seeking reversal pursuant to a *per se* conflict, the complaining party need not show that he or she was prejudiced by counsel's representation. *Id.* at 480.

¶ 26    In *S.G.*, the children were placed in foster care, and the trial court eventually terminated the mother's parental rights. *Id.* at 478. During the shelter care hearing, the court appointed a public defender as GAL for the minors. At a subsequent hearing, another attorney was appointed as GAL, and the public defender who previously represented the children was appointed to represent the mother. The appellate court found that a *per se* conflict of interest existed. *Id.* at 481. In concluding that the *per se* rule applied, the court noted:

> "Although it is true that the record reflects that [the public defender] appeared in court on behalf of the minors only once, at the shelter-care hearing, the State's argument belies the underlying purpose of the *per se* conflict-of-interest rule. It is what is not in the record, or what is incapable of being reflected by the record, that prompts us to apply the *per se* conflict-of-interest rule in this case. Our concern is with the opinions [the public defender] had already formulated about the 'best interests of the children' when representing them and how those opinions might adversely impact his ability to later effectively represent [the mother] with 'undivided loyalty.' Therefore, we decline to evaluate how actively [the public defender] represented the minors in assessing [the mother's] conflict-of-interest claim." *Id.*

The court concluded that since the mother's court-appointed counsel had previously served as GAL for the children in the juvenile proceedings, prejudice would be presumed. It then reversed the termination order and remanded the cause for new proceedings. *Id.* at 482.

¶ 27    In *Darius G.*, the court cited *S.G.* with approval and concluded that the same attorney may not appear during the juvenile proceedings on behalf of different clients. *Darius G.*, 406 Ill. App. 3d at 738. In that case, the attorney who was initially appointed to represent the respondent was later appointed to represent the child in the same juvenile case. *Id.* The court noted that, while the shared goal in juvenile proceedings is to serve the best interest of the children, what the best interest is depends on the perspective and "competing positions clearly may exist within the unified goal." *Id.* The court held that "while multiple attorneys from the public defender's office may substitute to represent the same client, the *same* attorney may not during the proceedings appear on behalf of *different* clients." (Emphases in original.) *Id.*

¶ 28    Following the analysis of *S.G.* and *Darius G.*, we conclude that Drell's representation of Br. M. as GAL from 2013 to 2014 and Drell's later representation of respondent in the fitness hearing on the petition to terminate constitutes a *per se* conflict of interest. Although Drell's

representation of different clients was not simultaneous, the goal of the juvenile proceedings was clearly compromised. Any opinion Drell may have developed regarding Br. M.'s best interests in her prior capacity as GAL might have conflicted with respondent's position and affected counsel's ability to represent respondent in the termination proceeding with "undivided loyalty." We therefore reverse the order terminating respondent's parental rights and remand for new proceedings on the State's petition to terminate.

¶ 29 We further reject the State's reliance on *In re D.B.*, 246 Ill. App. 3d 484, 492 (1993), in which the appellate court found no *per se* conflict. In that case, the mother's attorney had previously served as the minor's GAL, and the mother continued with counsel's representation after he informed her that he had represented the minor but did not think that there was a conflict of interest. *Id.* Here, nothing in the record reveals that respondent was informed of a conflict of interest or waived her right to conflict-free representation. See *Darius G.*, 406 Ill. App. 3d at 734; *S.G.*, 347 Ill. App. 3d at 482.

¶ 30 Because we reverse the termination order and remand for new proceedings, it is not necessary to address the remaining issues on appeal.

¶ 31 III. CONCLUSION

¶ 32 The judgment of the circuit court of Will County is reversed, and the cause is remanded for a new hearing on the State's petition to terminate respondent's parental rights.

¶ 33 Reversed and remanded.

¶ 34 JUSTICE WRIGHT, dissenting:

¶ 35 I respectfully dissent. It is well established that a *per se* conflict of interest exists only when the court-appointed attorney has an existing *contemporaneous* relationship with a third party that makes undivided loyalty to both clients very difficult. *In re D.B.*, 246 Ill. App. 3d 484, 491 (1993); see *People v. Flores*, 128 Ill. 2d 66, 83 (1989). I submit that contemporaneous representation by *court-appointed* counsel for mother, Br. M., and Bo. M. has never existed. Further, in my view, mother's choice for her private counsel does not require our court to vacate the order terminating mother's parental rights.

¶ 36 I am not persuaded by the case law supporting mother's contention that this court has no choice and must remand for a new termination hearing of her parental rights due to a *per se* conflict of interest assignable to mother's *private* attorney, Drell. See *In re A.F.*, 2012 IL App (2d) 111079; *In re S.G.*, 347 Ill. App. 3d 476 (2004); *In re W.R.*, 2012 IL App (3d) 110179; *In re Quadaysha C.*, 409 Ill. App. 3d 1020 (2011). I believe this case law is distinguishable from the unique record in this case for two reasons. First, in each case listed above, the attorney with a purported conflict of loyalties between mother and child was not privately retained counsel. Next, in each decision mother discusses in her brief, there was only a single initial juvenile proceeding and no separate or supplemental petitions or multiple orders of wardship. I submit the facts contained in this unique record are very different and require our court to affirm the order terminating mother's parental rights to each child.

¶ 37                               A. Br. M.'s Wardship

¶ 38     Here, there were multiple but separate and independent proceedings in case No. 13-JA-111. For example, there were two separate orders of wardship for Br. M., separated by three years in time. The first 2013 wardship of Br. M. ended in 2014, long before the 2016 proceedings gave rise to a second and unrelated wardship order. The second wardship order was independently based on events that took place after the termination of the first order of wardship.

¶ 39     Risking redundancy, I restate that we have two separate and distinct juvenile proceedings regarding Br. M. in this record. One proceeding was based solely on the initial 2013 petition regarding Br. M. This proceeding was terminated and closed by court order in 2014. During all proceedings on the first petition in case No. 13-JA-111, Drell represented only Br. M. and did not represent mother.[1]

¶ 40     I respectfully observe that a second juvenile proceeding, alleging that Br. M. should become a ward of the court, began in 2016. It is undisputed that even though Drell had been the court-appointed guardian *ad litem* for Br. M. with respect to the first petition, in the second and separate proceeding, the court appointed CASA to act as Br. M.'s guardian *ad litem*. For purposes of the second supplemental petition filed in 2016, mother was also represented by court-appointed counsel. In this appeal, mother has not alleged that her court-appointed counsel had any divided loyalties between mother and CASA, Br. M.'s guardian *ad litem*.

¶ 41     However, in 2018, mother made a choice that gave rise to an argument about mother's attorney's undivided loyalty. Specifically, mother gave up appointed counsel and elected to privately retain Drell as her own attorney. On appeal, mother seems to argue that Drell's prior assignment as Br. M.'s guardian *ad litem* in 2013, should have disqualified Drell from acting as mother's privately retained counsel in 2018. This position requires our court to decide that Drell's *subsequent* private representation of mother in 2018 operates to now resurrect Drell's 2013 duty of loyalty to Br. M., even though that wardship ended in 2014. I disagree with mother's theory because Drell was not court-appointed counsel for mother.

¶ 42     For purposes of her challenge to the order terminating her parental rights, mother would like this court to disqualify and sanction Drell's failure to recognize and then disclose the conflict by vacating the court's order terminating mother's parental rights. I recognize mother has the absolute right to retain counsel of her choice. However, if a *per se* conflict of interest exists in this case, then every parent would be wise to replace nonconflicted court-appointed counsel with private counsel, arguably previously tied to another party. This approach should not be encouraged and would guarantee every parent a right to relief from adverse rulings by choosing private counsel with arguable conflicts. See *In re D.B.*, 246 Ill. App. 3d 484.

¶ 43     Further, even if Drell *knowing*ly violated her ethical duties to her prior client, Br. M., which I do not believe to be true, our court should not choose a harsh procedural remedy, such as vacating the order terminating parental rights, to counterbalance knowing and unethical conduct by private counsel. See *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 184 (1997). Since mother has not attempted to show actual prejudice, the more measured remedy is for mother, the trial judge, or this court to report Drell's conduct to the ARDC for disciplinary proceedings,

_____

[1]CASA represented Br. M. and Bembnister represented mother during the proceedings on the State's first supplemental petition.

if warranted.

¶ 44                                    B. Bo. M.'s Wardship

¶ 45        Bo. M. is younger than his half-brother, Br. M. Mother gave birth to Bo. M. on February 21, 2015, while there was no active pending juvenile proceeding against mother with respect to Br. M. However, on September 26, 2016, the State filed an original petition alleging that Bo. M. was a neglected child in Will County case No. 16-JA-111. At all times during this proceeding, CASA was Bo. M.'s court-appointed guardian *ad litem*. Drell has never represented Bo. M. in any proceeding the parties have brought to our attention in this appeal. Since there is no dual representation on Drell's part pertaining to mother and the younger child, Bo. M., I would affirm the trial court's order terminating mother's parental rights to Bo. M.

¶ 46        Based on the reasoning set forth above, I respectfully dissent and would affirm the trial court order terminating mother's parental rights to both Br. M. and Bo. M.