**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190723-U

Order filed August 13, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| IMPOUNDED<br>*In re* I.H. and J.H., | ) ) ) | Appeal from the Circuit Court<br>of the 10th Judicial Circuit,<br>Tazewell County, Illinois, |
| Minors | ) ) | |
| (The People of the State of Illinois, | ) ) | Appeal Nos. 3-19-0723 and 3-19-0724<br>(Consolidated) |
| Petitioner-Appellee, | ) ) | Circuit Nos. 19-JA-3 and 19-JA-4<br>(Consolidated). |
| v. | ) ) | |
| CHELSIE H., | ) ) | Honorable<br>Timothy J. Cusack, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE WRIGHT delivered the judgment of the court.
Presiding Justice Lytton and Justice McDade concurred in the judgment.

_____

**ORDER**

¶ 1   Held:   The trial court did not abuse its discretion when the court disqualified respondent's counsel. The trial court's fitness determination was not against the manifest weight of the evidence.

¶ 2   Respondent, Chelsie H., appeals from orders of the trial court disqualifying respondent's

privately retained counsel and finding respondent dispositionally unfit. Respondent argues on

appeal that no conflict of any nature existed to justify the trial court's decision to disqualify respondent's counsel, and that the trial court's finding of parental unfitness was against the manifest weight of the evidence.

¶ 3                                        I. BACKGROUND

¶ 4        On January 7, 2019, the State filed shelter care petitions (neglect petitions) alleging that I.H. (D.O.B. 07/26/17) and J.H. (D.O.B. 11/14/18) (minors) were neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/2-3(1)(b) (West 2018)) in that the minors' environment was injurious to their welfare. The neglect petitions alleged that on October 24, 2018, the Pekin police responded to respondent's residence based on a report alleging domestic violence committed against respondent by William H., the minors' biological father. According to respondent, William H. slapped respondent, who was eight months pregnant at the time, and then jumped on top of respondent. Allegedly, I. H. was present and began crying after witnessing the domestic violence. William H. was arrested and later charged with domestic battery in Tazewell County case No. 18-CM-788.

¶ 5        On October 25, 2018, respondent obtained an order of protection against William H. in Tazewell County case No. 18-OP-754, stemming from the October 24, 2018, domestic violence incident. On December 12, 2018, the Illinois Department of Children and Family Services (DCFS) determined the incident indicated that a substantial risk of physical injury to the minors existed based on the October 24, 2018, incident with respondent.

¶ 6        On January 3, 2019, the Pekin police once again responded to respondent's residence regarding another physical domestic dispute involving William H. The neglect petitions alleged that the minors were present when William H. punched his mother, Leah, in the face several times after Leah confronted him about his drug addiction to Suboxone.

¶ 7    On January 4, 2019, the Pekin police accompanied DCFS investigator Megan Couri to respondent's residence for the purpose of locating and speaking with William H. regarding the January 3, 2019, incident between William H. and his mother, Leah. Upon arrival, respondent denied that William H. was present in her home. However, the officers located William H. in a bedroom closet and arrested him for domestic battery.

¶ 8    During a police interview regarding the January 3, 2019, incident, respondent told the officers she allowed William H. to live at the residence even after filing the order of protection. Respondent stated that on January 3, 2019, respondent observed William H. and Leah engaged in a verbal argument and then observed them pushing one another in the master bedroom. Leah told respondent that William H. struck her several times in the face. Respondent described a bloody, swollen gash that she observed on Leah's face on January 3, 2019. According to respondent, both minors were present during the altercation.

¶ 9    Respondent also spoke to Couri and reported that William H. often hurt her. Respondent indicated that William H. was responsible for the holes in the doors of the residence because he has a "bad temper." Respondent also told Couri that William H. had a serious substance abuse problem and abused Suboxone daily. For these reasons, the State's neglect petitions alleged that it was in the best interests of the minors that they be adjudicated wards of the court and placed in shelter care.

¶ 10    On February 15, 2019, respondent answered the State's neglect petitions. At the time of her answer, respondent was represented by Burt Dancey, her privately retained legal counsel. Respondent admitted to the majority of the allegations contained in the neglect petitions. Respondent admitted that William H. hit her in October 2018 but stated that William H. fell,

3

rather than jumped, on her. Respondent stated that October 24, 2018, was the first time William H. hit her, and he did not "often" physically abuse her.

¶ 11    Respondent stated that William H. has a temper and is trying to get his substance abuse issue under control. Respondent additionally admitted to the following facts: (1) respondent lied about William H.'s presence in the residence on January 4, 2019; (2) an altercation between William H. and Leah took place on January 3, 2019; (3) respondent considered dropping the order of protection but knew it needed to be kept in place; and (4) respondent allowed William H. to visit the minors, though not on a regular basis.

¶ 12    On May 3, 2019, William H. filed a motion to disqualify and remove respondent's attorney (motion to disqualify), Burt Dancey, from the juvenile proceeding. William H. alleged Dancey's representation of respondent violated Rule 1.7 of the Illinois Rules of Professional Conduct of 2010 (Ill. R. Prof'l Conduct (2010) R. 1.7 (eff. Jan. 1, 2010)). William H.'s motion to disqualify asserted that Dancey had a conflict of interest because he previously represented respondent's mother, Iva Wood, in a dissolution proceeding. William H. asserted that Dancey had been present at respondent's home on January 4, 2019, when respondent was interviewed by DCFS and the Pekin police as part of the investigation. For these reasons, William H. asserted that Dancey was a possible witness to William H.'s neglect and that his loyalty to respondent was compromised based on his prior representation of Wood.

¶ 13    During the hearing on the motion to disqualify, Kaylee Hinderliter, respondent's sister, testified that on January 4, 2019, DCFS took the minors into protective custody. DCFS conducted a check of Kaylee's residence as a possible location for the temporary placement of the minors. Kaylee testified that she was present at respondent's residence on January 4, 2019, where she spoke with Dancey. When asked if Dancey spoke to Kaylee as her attorney at that

4

time, Kaylee replied "Uh-huh." Once DCFS decided the minors would not be temporarily placed with Kaylee, Dancey helped Kaylee appeal that decision. On cross-examination by Dancey, Kaylee testified that Dancey only became her attorney after DCFS denied her request for temporary placement of the minors, which was considerably after January 4, 2019.

¶ 14    Couri testified that she arrived at respondent's residence on January 4, 2019, for the purpose of conducting a DCFS investigation into the events that occurred the day prior. At that time, respondent suggested her mother, Iva Wood, would be a suitable temporary placement for the minors. Based on this information, Couri placed a phone call to Wood. During this conversation, Wood became upset and handed the phone to a male who identified himself as "Burt," a friend. Later, Dancey arrived at respondent's residence and identified himself to Couri as "their attorney."[1] During her investigation, Couri discovered that Wood was barred from taking the minors, owing to a pending or unresolved court case. Wood became upset and yelled at Dancey, stating that Dancey did not do his job because her record was supposed to be clear. Couri also witnessed Dancey speaking with Kaylee. On cross-examination by Dancey, Couri testified that Dancey may have stated that he was "her"[2] attorney. Couri agreed Dancey tried to have input into Couri's investigation at respondent's residence, but Couri told Dancey to "butt out." On further cross-examination, Couri unequivocally testified that Dancey referred to himself as "their" attorney.

¶ 15    Dancey also testified during the motion to disqualify hearing. Dancey explained that he was Wood's friend and had known the family since he was a young teenager. In fact, Dancey

---

[1] It is unclear to this court to whom exactly Dancey was referring to when stating "their," but it is clear from the record that William H. was attempting to elicit the inference that Dancey was a family attorney who knew and represented respondent, Wood, and Kaylee.

[2] It is unclear as to whom Dancey was referring to as "her."

drove Wood to the dentist for a procedure on January 4, 2019, the date the minors were removed from respondent's residence. Dancey testified that on January 4, 2019, he was simultaneously representing both respondent in her order of protection case against William H. and Wood in a divorce case. Dancey did not perceive any conflict of interest between his simultaneous representation of both respondent and Wood and did not seek to have either sign a conflict waiver. Dancey explained that a conflict of interest could arise if either party were to become adversarial. Dancey explained that he subsequently represented Kaylee in her appeal of the DCFS decision not to place the minors with Kaylee. According to Dancey, Kaylee's appeal was successful in that "they determined that the initial denial was improper, but they sent it back to the powers that be to reexamine it, and we haven't got a subsequent reexamination decision."

¶ 16        Following the testimony, counsel for William H. speculated that Dancey's representation of Kaylee in the DCFS appeal, which may still be ongoing, necessitated that attorney Dancey in some way argue that respondent was unfit, in direct opposition to respondent's interests. Counsel pointed out that Dancey may be called as a witness in the juvenile proceeding concerning previous events between Wood and William H.

¶ 17        Both the minors' guardian *ad litem* (GAL) and counsel for the State joined the motion seeking Dancey's removal from the case. The State additionally pointed out that Dancey's representation of the respondent in the instant juvenile case may require Dancey to cross-examine Wood and Kaylee, who were either current or former clients.

¶ 18        The trial court made a finding that Dancey continues to represent both respondent and Kaylee, who had diverging interests in the placement of the minors. The court also found that respondent, Wood, and Kaylee would all believe Dancey was acting as each individual's attorney in the juvenile proceeding and found that Dancey was a potential occurrence witness.

6

The trial court granted the motion to disqualify Dancey as respondent's attorney. Thereafter, the trial court appointed assistant public defender Sam Snyder to represent respondent.

¶ 19    On September 13, 2019, Snyder answered the State's neglect petitions on respondent's behalf. This answer admitted the State's allegations absent the "punching incident." Respondent claimed insufficient knowledge regarding DCFS's decision to indicate a substantial risk of physical injury to the minors based on the October 24, 2018, incident, but stipulated that those allegations could be proven by clear and convincing evidence.

¶ 20    On October 24, 2019, the court conducted adjudicatory and dispositional hearings. At the outset, the parties waived a factual basis, based on respondent's answers to the neglect petitions, and the trial court found the neglect petitions proven by a preponderance of the evidence without objections from any party. The trial court adjudicated the minors neglected by finding their environment was injurious to their welfare and additionally found that the abuse or neglect was inflicted by respondent and William H.

¶ 21    At the dispositional hearing, the parties relied almost exclusively on an October 17, 2019, dispositional hearing report (report) submitted by the Children's Home Association of Illinois. The report revealed that respondent had been unemployed throughout the entirety of the case and had a link card for food. Respondent continued to reside in subsidized housing in Pekin, Illinois. Respondent reported at the beginning of the case that William H. also resided in the apartment, but that the apartment complex had since banned him from the property. In February 2019, respondent dropped the order of protection against William H. and was subsequently arrested for contempt of court at that time. Respondent reported that she was still in a relationship with William H. at that time, despite reporting that William H. broke into her residence and hit her on the cheek on an undisclosed date. The report indicated that a no contact order remains in place in

7

Tazewell County, prohibiting William H. from having contact with respondent. Respondent was observed having contact with William H. on several occasions, and William H. was arrested for violating the no contact order. Respondent was currently pregnant and due to give birth on December 3, 2019. William H. is the putative father, and respondent intends to name the child after the father if the child is a male.

¶ 22    Respondent is actively seeing a therapist and completed a domestic violence course on August 28, 2019. The report revealed that following respondent's completion of the domestic violence course, respondent continues to minimize the level and impact of the domestic violence within her home and the impact of this violence on the minors. Respondent completed a parenting class on April 25, 2019. Respondent was inconsistent with completing random drug and alcohol drops and failed to appear on eight occasions. However, the drops that have been completed were negative. Respondent completed a substance abuse and mental health assessment on March 29, 2019, and does not meet the criteria for a mental health or substance abuse diagnosis.

¶ 23    Respondent participates in weekly visitation with the minors, consisting of one, supervised, two-hour session. Respondent attended 22 out of the 23 scheduled visits. Respondent missed a visit because she was in custody at the Tazewell County Jail. Respondent reads to the minors and plays on the floor with them. Respondent was provided a journal to communicate with the minors' foster parents but fails to utilize the journal effectively to engage in the minors' lives. On August 28, 2019, a caseworker provided respondent with a list of gluten-free items respondent could bring to the visits because a doctor recently put I.H. on a gluten-free diet. Respondent displayed a lack of interest in taking I.H.'s potential allergy seriously. I.H. once left a visit with respondent and broke out in hives and blisters. Respondent is no longer allowed to

8

bring outside food to visits. Respondent further failed to take I.H. to the restroom during visits, though I.H. was being potty-trained at the time. Respondent also showed up 40 minutes late to I.H.'s appointment to have tubes placed in her ears and missed the surgery.

¶ 24 During the hearing, a caseworker briefly testified consistently with the report and added that respondent had recently participated in drug drops twice per month as scheduled. Based on the evidence submitted to the court, counsel for respondent argued the State failed to meet their burden of proving respondent was an unfit parent. Counsel argued respondent's engagement and completion of recommended services evidenced respondent's personal improvement and dedication toward the minors. Both counsel for the State and the minors' GAL requested that the court find respondent unfit, arguing that while respondent has engaged in services, she remained in a relationship with William H. who continually batters her and abuses drugs.

¶ 25 The trial court found respondent unfit for the reasons stated in the neglect petitions and the report. The trial court stated that respondent was making great strides and was close to attaining fitness. On November 22, 2019, respondent filed a timely notice of appeal.

¶ 26                                II. ANALYSIS

¶ 27 On appeal, respondent first contends her privately retained counsel should not have been disqualified by the court because defense counsel was not operating under a *per se* conflict of interest. The State submits the trial court properly disqualified counsel due to the existence of at least one *per se* conflict of interest.

¶ 28                        A. Disqualification of Counsel

¶ 29 It is well established that both minors and their parents are entitled to be represented by counsel in juvenile proceedings under the Act. 705 ILCS 405/1-5(1) (West 2018). To safeguard this statutory right, courts have held that counsel may not represent conflicting interests or

undertake the discharge of inconsistent duties in his or her representation of a client. *In re Br. M.*, 2020 IL App (3d) 190603, ¶ 24. The *per se* conflict of interest rule arose in criminal law but has also been applied to juvenile proceedings under the Act. *In re W.R.*, 2012 IL App (3d) 110179, ¶ 29. A *per se* conflict of interest can occur when the same attorney appears on behalf of different parties in the same proceedings. *In re Quadaysha* C., 409 Ill. App. 3d 1020, 1022 (2011); *In re Darius G.*, 406 Ill. App. 3d 727, 739 (2010). A *per se* conflict may also occur where an attorney has ties to a person who might benefit from an unfavorable verdict for the attorney's client or where a parent's court-appointed attorney previously represented the minors as the GAL in the same juvenile proceeding. *In re Br. M.*, 2020 IL App (3d) 110179, ¶ 25; *In re S.G.,* 347 Ill. App. 3d 476, 478 (2004). The *per se* nature of the rule does not require the complaining party to show prejudice to obtain a reversal. *In re Br. M.*, 2020 IL App (3d) 110179, ¶ 25.

¶ 30        Our supreme court has instructed that the concept of a *per se* conflict of interest only applies to cases where the *represented party* claims ineffective assistance of counsel due to his or her attorney's ongoing conflict. *People v. Ortega*, 209 Ill. 2d 354, 364 (2004); *People v. Holmes*, 141 Ill. 2d 204, 220-22 (1990). Significantly, this record does not establish a true *per se* conflict because respondent, the represented party, does not claim her attorney had any divided loyalties. Instead, the issue arose because another party, the minor's father, had concerns about Dancey's divided loyalties and possible status as an occurrence witness.

¶ 31        However, in cases such as this, a trial court is empowered to disqualify counsel even absent a *per se* conflict. See *Ortega*, 209 Ill. 2d at 364. In fact, the case law grants a trial court wide discretion on such matters. Whether counsel should be disqualified is left to the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Schwartz v.*

10

*Cortelloni*, 177 Ill. 2d 166, 176 (1997). An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable such that no reasonable person could agree with the decision. *People v. Rivera*, 2013 IL 112467, ¶ 37. Based on this record, we agree with the State that the trial court did not abuse its discretion in this case.

¶ 32 At the outset, it should be noted that the prosecution and the minors' GAL joined William H.'s view that Dancey's questionable loyalties to multiple parties and/or witnesses could jeopardize the integrity of these juvenile proceedings. After hearing the parties argument, the trial court made a finding, based on the testimony presented, that Dancey was contemporaneously representing respondent as well as her sister, Kaylee, who was appealing DCFS's refusal to place the minors in Kaylee's temporary care pending the outcome of the instant proceedings.

¶ 33 The record also shows that respondent suggested her mother, Iva Wood, would be a suitable temporary caregiver for the minors. It appears Wood was willing to become the temporary caregiver. However, DCFS denied placement of the minors with Wood, another one of Dancey's clients, based on concerns related to Wood's prior criminal history. The trial court learned that Wood assigned blame to Dancey for this unfavorable decision by DCFS since Wood expected Dancey would take legal steps to make the discovery of Wood's prior criminal history unlikely.

¶ 34 Obviously, the testimony adduced at the hearing on the motion to disqualify revealed a complex web of friendships and attorney client relationships between Dancey, respondent, and various persons involved or hoping to become involved as caregivers for the minors. For these reasons, we hold that the trial court did not abuse its discretion by disqualifying attorney Dancey and then appointing competent counsel to represent respondent.

11

¶ 35                                    B. Parental Fitness

¶ 36        Lastly, even if the trial court properly disqualified Dancey, respondent argues this court

should reverse the finding of respondent's dispositional unfitness. Respondent urges this court to

determine the trial court's finding was against the manifest weight of the evidence.

¶ 37        During dispositional fitness proceedings that do not result in the termination of parental

rights, the State is required to prove a parent is unfit by a preponderance of the evidence. *In re*

*April C.*, 326 Ill. App. 3d 245, 257 (2001). The trial court's dispositional fitness determination

will not be disturbed on appeal unless the determination is contrary to the manifest weight of the

evidence. *In re A.P.*, 2013 IL App (3d) 120672, ¶ 17. "A finding is against the manifest weight of

the evidence where a review of the record clearly demonstrates that the trial court should have

reached the opposite result." *Id.*

¶ 38        The record in this case documents a history of domestic violence between respondent and

William H. The record also reveals that at least one other act of domestic violence took place in

respondent's household, involving William H. and his mother, when the minors were present.

Despite the documented violence and the existence of orders of protection and/or no contact

orders, mother continued to allow William H. to be present in her home and have contact with

the minors. Respondent reports she continues to have a relationship with William H. and is

expecting William H.'s child. The evidence presented to the trial court during the dispositional

hearing supports the trial court's finding. For this reason, we affirm the trial court because the

court's finding was not against the manifest weight of the evidence.

¶ 39                                       III. CONCLUSION

¶ 40        The judgment of the circuit court of Tazewell County is affirmed.

¶ 41        Affirmed.